**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |
|---|---|
| THE DAILY WIRE, LLC *et al.*,<br><br>               Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT<br>OF STATE *et al.*,<br><br>               Defendants. | Civil Action No. 6:23-cv-00609 (JDK) |

**DEFENDANTS' MOTION TO TRANSFER VENUE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel
Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

CRISTEN C. HANDLEY
CODY T. KNAPP
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C., 20005
Tel: (202)-305-2677
Fax: (202)-616-8470
Cristen.Handley@usdoj.gov

*Counsel for Defendants*

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

LEGAL STANDARD ........................................................................................................3

ARGUMENT ......................................................................................................................4

I.     The Eastern District of Texas is an improper venue for this case...................................4

     A.     Venue cannot be predicated on the presence of the State of Texas, because Texas lacks Article III standing and does not reside in this District..........................................................................................................4

          i.     Texas lacks Article III standing.............................................................5

          ii.     Texas does not "reside" in this District for venue purposes.............10

     B.     Plaintiffs identify no events or omissions giving rise to Texas's claims that occurred in this District. .............................................................11

II.     Because venue is improper in this District, this case should be transferred to the most appropriate proper venue:  the U.S. District Court for the District of Columbia..............................................................................................................14

CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
  37 F.4th 1038 (5th Cir. 2022) .................................................................................................6

*Birnbaum v. Blum,*
  546 F. Supp. 1363 (S.D.N.Y. 1982) ......................................................................................10

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
  2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) .......................................................................14

*Chapman v. Dell, Inc.,*
  2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ......................................................................15

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ..................................................................................................................8

*Ctr. for Biological Diversity v. EPA,*
  937 F.3d 533 (5th Cir. 2019) ....................................................................................................6

*Denning v. Bond Pharmacy, Inc.,*
  50 F.4th 445 (5th Cir. 2022) .....................................................................................................3

*E.T. v. Paxton,*
  41 F.4th 709 (5th Cir. 2022) .....................................................................................................3

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.,*
  618 F.3d 1153 (10th Cir. 2010) .........................................................................................12, 13

*Guajardo v. State Bar of Tex.,*
  803 F. App'x 750 (5th Cir. 2020) ...........................................................................................14

*Hanby v. Shell Oil Co.,*
  144 F. Supp. 2d 673 (E.D. Tex. 2001) ....................................................................................15

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury,*
  946 F.3d 649 (5th Cir. 2019) .....................................................................................................9

*Inst. of Certified Practitioners, Inc. v. Bentsen,*
  874 F. Supp. 1370 (N.D. Ga. 1994) ..........................................................................................9

*Irvin v. Cleveland Constr., Inc.,*
  2009 WL 10699385 (W.D. Tex. Dec. 10, 2009) .....................................................................12

*Jenkins Brick Co. v. Bremer,*
  321 F.3d 1366 (11th Cir. 2003) ...............................................................................................12

*Langton v. Cheyond Comm'n, LLC,*
    282 F. Supp. 2d 504 (E.D. Tex. 2003) ........................................................... 4

*Laufer v. Mann Hosp., LLC,*
    996 F.3d 269 (5th Cir. 2021) ....................................................................... 3

*Lawson, v. U.S. Dep't of Just.,*
    527 F. Supp. 3d 894 (N.D. Tex. 2021) ................................................... 3, 4

*Leonhart v. McCormick,*
    395 F. Supp. 1073 (W.D. Pa. 1975) ......................................................... 10

*Leroy v. Great Western United Corp.,*
    443 U.S. 173 (1979) ............................................................................ 12, 13

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009) ....................................................................... 8

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..................................................................... 3, 6, 7, 9

*McCormick v. Payne,*
    2015 WL 7424772 (N.D. Tex. Nov. 23, 2015) ................................... 14, 15

*Miller v. Albright,*
    523 U.S. 420 (1998) ...................................................................... 1, 3, 9

*Morris v. ARTA Travel,*
    2023 WL 8285022 (N.D. Tex. Nov. 30, 2023) ........................................ 14

*Nestor v. Hershey,*
    425 F.2d 504 (D.C. Cir. 1969) ................................................................. 10

*NetChoice, LLC v. Paxton,*
    2023 WL 6319650 (Mem) (U.S. Sept. 29, 2023) ...................................... 6

*NetChoice, LLC v. Paxton,*
    142 S. Ct. 1715 (2022) ............................................................................... 5

*NetChoice, LLC v. Paxton,*
    573 F. Supp. 3d 1092 (W.D. Tex. 2021), *vacated and remanded,*
    49 F.4th 439 (5th Cir. 2022) ...................................................................... 5

*O'Neill v. Battisti,*
    472 F.2d 789 (6th Cir. 1972) ................................................................... 10

*Perkins v. Snider,*
    1994 WL 530045 (E.D. Pa. Sept. 2, 1994) .............................................. 10

*Republic of Iraq v. Beaty,*
    556 U.S. 848 (2009) ..........................................................................................11

*Sigoloff v. Austin,*
    2023 WL 2142982 (N.D. Tex. 2023) ......................................................................4

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ...............................................................................................9

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .............................................................................................3

*Tactacell, LLC v. Deer Mgmt. Sys., LLC,*
    620 F. Supp. 3d 524 (W.D. La. 2022) ...................................................................13

*Tenth St. Residential Ass'n v. City of Dall.,*
    968 F.3d 492 (5th Cir. 2020) .................................................................................7

*Texas v. Garland,*
    2023 WL 4851893 (N.D. Tex. 2023) ............................................................... 10, 11

*Trinity Indus., Inc. v. Martin,*
    963 F.2d 795 (5th Cir. 1992) .................................................................................7

*Turentine v. FC Lebanon II LLC,*
    2022 WL 16951647 (N.D. Tex. Nov. 15, 2022) .......................................................13

*Woodke v. Dahm,*
    70 F.3d 983 (8th Cir. 1995) .................................................................................13

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.,*
    982 F. Supp. 2d 714 (W.D. Tex. 2013) .................................................................13

## FEDERAL STATUTES

28 U.S.C. § 1391 ...........................................................................................*passim*

28 U.S.C. § 1404 ..............................................................................................15

28 U.S.C. § 1406 ..............................................................................1, 4, 14, 15

## STATE STATUTES

Tex. Bus. & Com. Code Ann. §§ 120.001 *et seq.* ...................................................5

Tex. Civ. Prac. & Rem. Code Ann. § 143A.001 .......................................................5

Tex. Civ. Prac. & Rem. Code Ann. § 143A.002 .......................................................5

Tex. Civ. Prac. & Rem. Code Ann. § 143A.006 .......................................................5

**OTHER AUTHORITIES**

15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ................................................10

17 Moore's Federal Practice - Civil § 110.03 (2023) ....................................................................10

Nat'l Endowment for Democracy, *About the National Endowment for Democracy*,
    https://www.ned.org/about/ ................................................................................................7

Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed. 2023 update) .............11

## INTRODUCTION

This case is primarily a challenge by two press outlets—neither of which is located in Texas—concerning policy decisions made by federal officials in Washington, D.C.  The Complaint alleges that the Department of State gave "cash prizes" and other support to private actors which, according to Plaintiffs, enabled those actors to develop unspecified "technologies" that still *other* unidentified private actors decided (of their own accord) to use to reduce or discourage access to the outlets' speech.  The sole asserted connection between this case and the Eastern District of Texas is a single, conclusory allegation that one Plaintiff, the State of Texas, resides here, and that a substantial part of the actions giving rise to Texas's claims (but not the other Plaintiffs' claims) occurred here.  Besides being unsupported by well-pleaded factual allegations, Plaintiffs' assertion of venue overlooks a foundational flaw:  Texas lacks Article III standing and therefore, under Supreme Court precedent, venue cannot be predicated on its unwarranted participation in this suit.  *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998).  For that reason, venue is improper in this District.

Even if Texas had standing, however, venue in this District would still be improper.  Contrary to Plaintiffs' allegations, no party resides in this District, and Plaintiffs allege no actions giving rise to Texas's—or any Plaintiff's—claims that occurred here.  Accordingly, under 28 U.S.C. § 1406(a) this case must be dismissed or transferred to a venue where it "could have been brought."  While Defendants would not oppose dismissal, the better course is to transfer this case to the U.S. District Court for the District of Columbia, where venue is proper, and where the strongest connection to the parties, witnesses, and issues lies.[1]

---

[1] To avoid unnecessary expenditure of the parties' and the Court's resources pending resolution of this motion, Defendants have moved separately to stay all outstanding deadlines, including the government's deadline to respond to the Complaint and to oppose Plaintiffs' recently filed motions for a preliminary injunction and for expedited discovery.  *See* ECF No. 9.  Plaintiffs' motions do not address Texas's standing or any other issues material to this motion to transfer and thus do not warrant consideration by the Court before adjudicating this motion.

## BACKGROUND

This action commenced on December 6, 2023. Plaintiffs are The Daily Wire and The Federalist ("the Media Plaintiffs"), which are online media organizations, and the State of Texas. The Complaint alleges that the Department of State, through its component the Global Engagement Center ("Defendants"), "is actively intervening in the news-media market to render disfavored press outlets unprofitable by funding the infrastructure, development, and marketing and promotion of censorship technology." *See* Compl. ¶ 1, ECF No. 1. In support, the Complaint alleges that Defendants operate a so-called "censorship scheme" by which they used a now-retired platform called "Disinformation Cloud" or "Disinfo Cloud" to promote the activities of two private companies, the Global Disinformation Index ("GDI") and NewsGuard Technologies, Inc. ("NewsGuard"). *See id.* ¶¶ 3, 55-57. GDI and NewsGuard, in turn, allegedly generate "blacklists" naming the Media Plaintiffs "unreliable" or "risky" news sources, thereby damaging their advertising revenue and viewership. *See id.* ¶¶ 3-4.

The principal funding decisions challenged in the Complaint allegedly date back several years. According to Plaintiffs, Defendants awarded $100,000 to GDI in 2021 as part of a "U.S.-Paris Tech Challenge," which was an "event to 'counter propaganda and disinformation use' in Europe." *Id.* ¶ 59. Plaintiffs further allege that, in 2020, Defendants "co-sponsored a 'COVID-19 misinformation and disinformation' tech challenge," wherein NewsGuard was one of three winners purportedly awarded $25,000. *Id.* ¶¶ 142-44. Additionally, Plaintiffs allege that Defendants used Disinfo Cloud to promote GDI and NewsGuard by other means, including through Disinfo Cloud's Twitter account, *id.* ¶¶ 87, 133, 155, 158, 161; a Disinfo Cloud news "Digest," *id.* ¶ 156; and a "'tech testbed' initiative" purportedly used to "identify, assess, test, and implement censorship technology by running pilots using the various technologies," *id.* ¶¶ 90-92.

Through this alleged course of "recommending censorship technology to the private sector, which then targets the American press and/or American speech," the Media Plaintiffs argue that Defendants "are inducing the censorship of speech" in violation of the First

Amendment. *See id.* ¶¶ 164, 272-82. Plaintiff the State of Texas claims to join this suit to "protect its sovereign interest in creating and enforcing its [presently enjoined] legal code that regulates social media companies with market power as common carriers." *Id.* ¶ 14. In addition to the Media Plaintiffs' First Amendment claims (Counts I and II), Plaintiffs bring three claims alleging other forms of agency action beyond Constitutional and statutory authority (Counts III-IV).

## LEGAL STANDARD

a.     Venue may not be established in a district based on the location of plaintiffs that lack Article III standing. *See Miller*, 523 U.S. at 426-27. To establish standing, a plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 (5th Cir. 2022).[2] The injury must be "both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *E.T. v. Paxton*, 41 F.4th 709, 715 (5th Cir. 2022); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, the plaintiff's "burden is to allege a plausible set of facts establishing jurisdiction." *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 271 (5th Cir. 2021). Where, as here, a plaintiff is not "the object of the government action or inaction" at issue, standing is "substantially more difficult to establish." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

b.     In cases brought against federal officials or a federal agency, venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). While "[t]here is a split of authority among federal courts and in the Fifth Circuit, . . . the majority of courts place the burden of establishing venue on the plaintiff." *See, e.g., Lawson, v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894,

---

[2] Internal quotations and citations omitted throughout this brief unless otherwise noted.

896 (N.D. Tex. 2021) (adopting this rule as "the better approach"); *Sigoloff v. Austin*, 2023 WL 2142982, at *1 (N.D. Tex. 2023) (same); *see also Langton v. Cbeyond Comm'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (same).  If a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

## ARGUMENT

This case lays venue in the wrong district and should be transferred to the most appropriate proper venue:  the United States District Court for the District of Columbia.

**I.      The Eastern District of Texas is an improper venue for this case.**

Plaintiffs invoke the second and third categories under 28 U.S.C. § 1391(e)(1), alleging that venue is proper because "Plaintiff the State of Texas is located in this District, and a substantial part of the events or omissions giving rise to its claims occurred here."  *See* Compl. ¶ 9.[3]  For the reasons below, this argument fails at each step.

**A.  Venue cannot be predicated on the presence of the State of Texas, because Texas lacks Article III standing and does not reside in this District.**

In the Complaint, Texas appears only on the periphery, as the allegations are overwhelmingly focused on the purported First Amendment concerns of the Media Plaintiffs.  Indeed, just 11 out of the 313 paragraphs in the Complaint relate to Texas—most of which recycle the same points.  *See id.* ¶¶ 5, 9, 13-14, 234-39, 253.  While having little if anything to do with this case, Texas is nonetheless the cornerstone of Plaintiffs' claim to venue, which rests exclusively on Texas's asserted location and its legal claims.  *See id.* ¶ 9.  This approach has two key flaws:  first, Texas has failed to adequately allege Article III standing; second, even assuming Texas had standing, Texas does not "reside" in this District for venue purposes.

---

[3] Plaintiffs cite 28 U.S.C. § 1391(b)(2), which applies generally to venue in civil actions.  *See* Compl. ¶ 9. But where, as here, a defendant is a federal official or federal agency, the venue provisions in 28 U.S.C. § 1391(e)(1) apply.  However, the pertinent provisions under both sections are identical.

i. **Texas lacks Article III standing.**

Texas alleges that, by supporting GDI and NewsGuard, which in turn market technology to, *inter alia*, social media companies, which in turn decide to use that technology to "censor" the Media Plaintiffs, Defendants "induce social media companies to violate HB 20." *Id.* ¶ 237. HB 20 is a Texas law that attempts to regulate major social media platforms like Facebook, YouTube, and X (formerly known as Twitter) by restricting their ability to moderate certain user content and requiring them to provide explanations for certain forms of content moderation. *See* Tex. Bus. & Com. Code Ann. §§ 120.001 *et seq.*; *see also* Compl. ¶ 235.[4] Through this circuitous stream of inferences, Texas alleges that Defendants' actions "interfere with [its] efforts to enforce HB 20." *See id.* ¶ 234.

Crucially, although one might miss it from reading the Complaint, Texas cannot enforce HB 20 because that law never went into effect. HB 20 was scheduled to take effect on December 2, 2021, but on December 1, 2021, it was preliminarily enjoined by the Western District of Texas. *See NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092 (W.D. Tex. 2021), *vacated and remanded*, 49 F.4th 439 (5th Cir. 2022) (mandate stayed). There, two trade associations representing social media platforms brought a pre-enforcement challenge to HB 20, principally on First Amendment grounds. *Id.* at 1101. The district court held that HB 20 violates the First Amendment rights of social media companies by compelling them to present content they deem objectionable and by impermissibly burdening their editorial discretion. *Id.* at 1106, 1109-12. The Fifth Circuit stayed the preliminary injunction, but the Supreme Court vacated the stay. *NetChoice, LLC v. Paxton*, 142 S. Ct. 1715 (2022). The case is now pending before

---

[4] H.B. 20's content-moderation provisions prohibit social media platforms from "censor[ing] a user, a user's expression, or a user's ability to receive the expression of another person" based on "(1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression or another person's expression; or (3) a user's geographic location in [Texas]." Tex. Civ. Prac. & Rem. Code Ann. § 143A.002(a); *see id.* § 143A.006 (exceptions). The law defines "[c]ensor" as "to block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against." *Id.* § 143A.001(1).

the Supreme Court, with oral argument scheduled for February 26, 2024.  *See NetChoice, LLC
v. Paxton*, 2023 WL 6319650 (Mem) (U.S. Sept. 29, 2023).

Whatever the outcome of *NetChoice* may mean for the future enforceability of HB 20, this
much is clear right now:  Texas cannot presently enforce HB 20 because it is enjoined from
doing so, not because of any actions by Defendants.  That likely explains why the Complaint
lacks allegations that Texas has ever attempted to enforce HB 20, much less allegations that
Defendants obstructed any such attempt.  Instead, all that underlies Texas's injury allegations
are bare-bones, conclusory statements that Defendants' actions "interfere with Texas's efforts
to enforce HB 20."  *See, e.g.*, Compl. ¶ 235.  But "Article III demands more than such
conclusory assertions." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir. 2019).

The analysis should end here, since no amount of artful pleading could overcome the
obstacle to Texas's standing that is presented by *NetChoice*.  Texas does not allege a future
injury if HB 20 goes into effect.  And for good reason, since any such allegation would rest on
pure speculation concerning the Supreme Court's forthcoming ruling and would not
demonstrate a "real and immediate threat" of injury.  *See, e.g., Attala Cnty., Miss. Branch of
NAACP v. Evans*, 37 F.4th 1038, 1043 (5th Cir. 2022); *see also Ctr. for Biological Diversity*, 937
F.3d at 537 ("By ensuring a future injury is not 'too speculative,' the imminence requirement
'reduce[s] the possibility of deciding a case in which no injury would have occurred at all.'"
(quoting *Lujan*, 504 U.S. at 564 n.2)).

Nonetheless, the Complaint alleges in conclusory fashion that the "injury to Texas's
sovereign interest is continuing and ongoing."  *See* Compl. ¶ 238.  That proposition is, to put
it mildly, in some tension with admissions elsewhere in the Complaint that the key activities
supporting Plaintiffs' allegations ended years ago.  For instance, the Complaint alleges that
Defendants awarded two "cash prizes" to GDI and NewsGuard, respectively: first, a $100,000
award to GDI in 2021 as the winner of the U.S.-Paris Tech Challenge, *see id*. ¶¶ 125, 127;
second, a $25,000 award to NewsGuard and two other winners of a 2020 COVID-19 tech

6

challenge, *see id.* ¶¶ 142-44.[5]  The Complaint does not allege that those years-old awards continue to fund any purported censorship activities (assuming they did so in the first place). And the Complaint itself acknowledges that the Disinfo Cloud platform and Digest have been discontinued for several years, *see id.* ¶¶ 160-61, 167; that "DisinfoCloud.com is no longer publicly accessible," *id.* ¶ 165; and that Park Capital Investment Group, a private entity which purportedly operated Disinfo Cloud, has been "shuttered," *id.* ¶ 55.

Still, Plaintiffs aver that Defendants continue to promote so-called censorship technology through other means.  Those include, allegedly, leaving up posts about GDI and NewsGuard on Disinfo Cloud's Twitter account, *id.* ¶ 161; "continu[ing] to use," in no specified way, "research and reports Disinfo Cloud authored," *id.* ¶ 162; moving vaguely described "information available at DisinfoCloud.com" to "another platform" (which is not named), *id.* ¶ 165; "continu[ing] to host tech challenges and . . . award grants to fund . . . censorship enterprises," *id.* ¶ 170; and working with a new company, Becera, founded by the former Disinfo Cloud administrator, *id.* ¶¶ 176-78.  The implausibility embedded within these allegations is transparent:  they present merely a random assortment of generalized gestures and do not pose even a possibility of interfering with Texas's enforcement of a law that is currently enjoined.  As the Fifth Circuit has observed, a "possibility, that maybe, in the future, if a series of events occur, [plaintiff] might suffer some injury is clearly too impalpable to" confer standing.  *Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992).

Even if Texas could surmount these obstacles and demonstrate an Article III injury, the Complaint fails to establish that any such injury would be traceable to Defendants.  Here, traceability requires Texas to allege a direct "causal connection" between its inability to enforce HB 20 and the complained-of actions by Defendants.  *Lujan*, 504 U.S. at 560; *Tenth St.*

---

[5] The Complaint also alleges that Defendants "funneled grant money amounting to hundreds of thousands of dollars to an organization operating as GDI, through the State-Department-funded National Endowment for Democracy, or 'NED'." Compl. ¶¶ 134, 135-39.  NED is a private, nonprofit entity and is not a party to this case.  *See* Nat'l Endowment for Democracy, *About the National Endowment for Democracy*, https://www.ned.org/about/ (last accessed Feb. 8, 2024).  In any event, the Complaint admits that NED "no longer provide[s] financial support to GDI."  *See* Compl. ¶ 140.

*Residential Ass'n v. City of Dall.*, 968 F.3d 492, 502 (5th Cir. 2020) (traceability demands a "direct relation between the injury asserted and the injurious conduct alleged").

It bears repeating that Texas cannot enforce HB 20 because that statute is preliminarily enjoined and has *never* gone into effect.  The Complaint makes no effort to grapple with this fatal point.  Instead, Plaintiffs allege a derivative causal theory by which independent actions of nonparties are imputed to Defendants through alleged "significant encouragement" "to limit the circulation and/or distribution of Media Plaintiffs' news reporting and speech."  *See* Compl. ¶¶ 215-17.  The Court should reject this vague and incomplete narrative.  It is based on the incomprehensible premise that, by allegedly giving two small awards to GDI and NewsGuard several years ago and promoting those entities in unspecified ways in the meantime, Defendants have somehow prevented Texas from enforcing a presently enjoined law that is directed at nonparty social media companies.  A theory so speculative, and that is premised on a chain of causal leaps that "depend[] on several layers of decisions by third parties," cannot withstand Article III scrutiny.  *See Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court.").

Assuming hypothetically that HB 20 were not presently enjoined, the Complaint would still not support any conclusion that Defendants' alleged actions interfere with Texas's enforcement efforts.  Again, HB 20 is directed at nonparty social media companies and purports to regulate those companies' independent choices to moderate user content.  If, under a hypothetically operative HB 20, Texas were to determine that a social media company had acted unlawfully, the Complaint alleges nothing to suggest that Defendants' actions would prevent Texas from enforcing HB 20 against that company.  Stated another way, even if Defendants had somehow "induce[d] social media companies to violate HB 20," Compl. ¶ 237, that would not be traceable to Texas's alleged injury unless (1) Texas was to take an enforcement action against a social media company and (2) Defendants were to obstruct that

enforcement action.  The Complaint lacks allegations that any such sequence has or is likely to occur.

The shortcomings of Texas's standing theory go at least one level deeper:  Texas has not pointed to any relief this Court could order that would allow Texas to enforce HB 20.  A plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *See, e.g.*, *Lujan*, 504 U.S. at 561.  Texas requests an injunction prohibiting Defendants from funding or otherwise supporting so-called censorship technology.  *See* Compl. at 66.  Such relief would not reverse the Western District of Texas's preliminary injunction over HB 20.  Nor would it necessarily prevent unidentified third parties not before this Court from taking actions that Texas would consider a violation of HB 20.  This demonstrates that Texas's injury is not redressable.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."); *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019).

Because it is Texas's burden to sufficiently allege standing, a theory that is so speculative, implausible, and internally incoherent cannot support Article III.  After all, the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case."  *See Lujan*, 504 U.S. at 561.  The same is likely true for the Media Plaintiffs, although this Court need not decide that question, given the straightforward and insurmountable venue defect that is immediately created by Texas's lack of standing in this case.  *See Miller*, 523 U.S. at 426-27 ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party.  Because venue in Texas was therefore improper, . . . the court transferred the case[.]"); *Inst. of Certified Practitioners, Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party.").

ii.     *Texas does not "reside" in this District for venue purposes.*

As noted, Plaintiffs rely solely on the presence of Texas as a party to demonstrate venue, and since Texas lacks standing, there is no need to address the remaining venue allegations. Assuming Texas had Article III standing, however, venue would still be improper in this District because Texas does not reside here.  "For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business."  28 U.S.C. § 1391(c)(2).  Texas's principal place of business does not lie in this District.

Rather, the State of Texas maintains its principal place of business where it performs its official duties—that is, its capital, Austin, located in the Austin Division of the Western District of Texas.  *See, e.g.*, *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties. State officials with 'statewide jurisdiction' may be deemed to reside in the state capitol."); *Perkins v. Snider*, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government."); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2023) (same).

Texas will likely argue that a State resides for venue purposes in any location within its borders.  While some caselaw supports this view, *see, e.g.*, *Texas v. Garland*, 2023 WL 4851893

at *3 (N.D. Tex. 2023), the venue statute provides no such rule.  Rather, the statute defines "residency . . . [f]or all venue purposes" only for the following categories of litigants:

- "[N]atural persons," 28 U.S.C. § 1391(c)(1);
- "[E]ntit[ies] with the capacity to sue and be sued in [their] common name under applicable law, whether or not incorporated," *id.* § 1391(c)(2);
- Defendants "not resident in the United States," *id.* § 1391(c)(3); and
- "[C]orporations in States with multiple districts," *id.* § 1391(d).

Congress could have created a fifth category for State sovereigns if it had desired such a rule.  It did not.  Accordingly, because State sovereigns are not specifically enumerated—and being neither natural persons, non-residents of the United States, nor corporations—they fall into the residual category under § 1391(c)(2) for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated."  *See id.* § 1391(c)(2); *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]").  Such an entity, "if a plaintiff," resides "only in the judicial district in which it maintains its principal place of business."  28 U.S.C. § 1391(c)(2).  Here, as explained above, that judicial district is where Texas performs its official activities: the Western District of Texas.  And, because the statute clearly indicates that an entity plaintiff can reside in only one district at a time—*i.e.*, the statute states that an entity plaintiff resides "*only* in *the* judicial district where it maintains its principal place of business"—Texas cannot assert dual residency outside the Western District.  *See id.* § 1391(c)(2) (emphasis added); *see also* Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed. 2023 update) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time.").

## B.  Plaintiffs identify no events or omissions giving rise to Texas's claims that occurred in this District.

As a secondary basis for venue, Plaintiffs argue that "a substantial part of the events or omissions giving rise to [Texas's] claims occurred" in this District.  *See* Compl. ¶ 9.  But this

conclusory allegation alone does not make venue proper.  *See Irvin v. Cleveland Constr., Inc.*, 2009 WL 10699385, at *1 (W.D. Tex. Dec. 10, 2009) ("Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that venue in that court is proper. . . . If there is no evidentiary hearing, courts allow a plaintiff to satisfy the burden by showing facts that, taken as true, establish venue.").  And the Complaint otherwise fails to allege that *any* events or omissions giving rise to Texas's, or any Plaintiff's, claims occurred in this District.

Beginning with Texas's claims, which appear in Counts III, IV, and V of the Complaint, Plaintiffs fail to draw any meaningful connection with the Eastern District of Texas.  This is inherently a function of the harms Texas alleges to suffer and the acts and omissions underlying its claims.  *Cf. Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (describing examination of the plaintiff's claims and underlying events as the first step in assessing venue under Section 1391(e)(1)(B)); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (asking first "[w]hat acts or omissions by [the defendant] 'gave rise' to [the plaintiff's] claim?").  Texas's central complaint in this case is that Defendants' alleged actions in Washington, D.C. to "fund, develop, market, and/or promote censorship tools, technology and censorship enterprises . . . interfere with Texas's efforts to enforce HB 20," Compl. ¶ 234, a "Texas statute that regulates social media companies as common carriers and prohibits them from censoring speech and press on their platforms," *id.* ¶ 235.  But, as discussed above, that statute has never been enforceable (much less actually enforced) because it was enjoined before it ever became effective.  *See supra* at 5.  Thus, far from identifying actions taken by Defendants within the Eastern District of Texas that give rise to Texas's claims, the Complaint affirmatively demonstrates that Defendants cannot possibly have interfered with Texas's non-existent efforts to enforce HB 20 in any location whatsoever.  To the extent Plaintiffs might attempt to base venue on the ground that Texas has felt the effects of Defendants' actions within this District in some other way, that argument would be flatly inconsistent with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, which

makes clear that a claim does not "arise" in a District merely because some of its effects may be felt there.  *See* 443 U.S. 173, 183-87 (1979).

Even beyond Texas's allegations concerning HB 20, none of the meagre factual allegations Plaintiffs offer involves "substantial 'events material to those claims [that] occurred' in the forum district."  *Emps. Mut.*, 618 F.3d at 1166.  To qualify as substantial, "material acts or omissions within the forum [must] bear a close nexus to the claims."  *Tactacell, LLC v. Deer Mgmt. Sys., LLC*, 620 F. Supp. 3d 524, 530 (W.D. La. 2022).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013).  And "in determining whether or not venue is proper, the Court looks to the defendant's conduct and where that conduct took place."  *Turentine v. FC Lebanon II LLC*, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022) (cleaned up); *see also Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (because the purpose of venue statutes is to protect defendants, "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff").

Here, rather than identify any relevant conduct by Defendants within this District, Plaintiffs vaguely gesture at the activities of various *nonparties*, none of which is alleged to have occurred in Texas.  *See, e.g.*, Compl. ¶ 55 (discussing "the private, for-profit, and now-shuttered entity Park Capital Investment Group, LLC, also known as Park Advisors or Disinfo Cloud"); *id.* ¶¶ 101–02 (describing actions by GDI, NewsGuard, the World Federation of Advertisers, the Global Alliance for Responsible Media, and their members).  If anything, Plaintiffs' allegations conclusively demonstrate that a substantial part of the events or omissions giving rise to this case occurred elsewhere, namely in the District of Columbia, where the principal

funding decisions alleged in the Complaint were made.  *See, e.g.*, *id.* ¶¶ 48-74 (describing decisions made in Washington, D.C.).[6]

Finally, the Complaint does not even purport to allege that events or omissions giving rise to the claims brought only by the Media Plaintiffs (Counts I and II) occurred in this District. Instead, Plaintiffs' venue allegation concerns only the claims asserted by Texas.  *See id.* ¶ 9 ("Venue is proper in this District . . . because Plaintiff the State of Texas is located in this District, and a substantial part of the events or omissions giving rise to *its* claims occurred here." (emphasis added)).  But a plaintiff bears the burden to prove that venue is proper "for each claim that a plaintiff brings against a defendant."  *Guajardo v. State Bar of Tex.*, 803 F. App'x 750, 755 (5th Cir. 2020); *see at Morris v. ARTA Travel*, 2023 WL 8285022, at *2 (N.D. Tex. Nov. 30, 2023); *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023).  Because Plaintiffs do not even assert that venue is proper as to the Media Plaintiffs' claims in Counts I or II, much less plead facts demonstrating that a substantial part of the events or omissions giving rise to those claims occurred in this District, at a minimum those claims must be dismissed or severed and transferred to a proper venue, namely the U.S. District Court for the District of Columbia.

## II.     Because venue is improper in this District, this case should be transferred to the most appropriate proper venue:  the U.S. District Court for the District of Columbia.

Where, as here, a case lays venue in the wrong District, the district court either "[1] shall dismiss, or [2] if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  As between those options, the court has "broad discretion."  *McCormick v. Payne*, 2015 WL 7424772, at *3 (N.D. Tex. Nov.

---

[6] Allegations concerning the acts and omissions of nonparties cannot support Texas's claim to venue in this District.  *See Career Colls.*, 2023 WL 2975164, at *2 ("The plain text 'events or omissions giving rise to the claim' implicates 'the' parties bringing the claim and not 'a' generalized burden on non-parties."); *see also id.* (rejecting claim of venue based on harm to nonparties because "none of the 'burdened' schools or institutions that reside in this division are parties here").

23, 2015).  The best course here is to transfer this matter to the venue with the strongest connection to this case:  the U.S. District Court for the District of Columbia.

Transfer, as opposed to dismissal, is "in the interest of justice" because, based on the Complaint, venue would be technically proper in two Districts—the District of Columbia and the Middle District of Tennessee (where The Daily Wire resides, *see* Compl. ¶ 11)—but only the District of Columbia has a meaningful connection to the actions giving rise to Plaintiffs' claims.  This case unquestionably "could have been brought" in the District of Columbia.  *See* 28 U.S.C. § 1406(a).  That is, the District of Columbia is where the Defendants reside, *see Sigaloff*, 2023 WL 2142982, at *3; where the principal funding decisions challenged in the Complaint were made; and where Plaintiff The Federalist resides, *see* Compl. ¶ 12.  *See also* 28 U.S.C. § 1391(e)(1).  Moreover, most of the attorneys and government witnesses involved in this matter are located in Washington, D.C.  Accordingly, the "interest of justice" as well as "the convenience of parties and witnesses," *see id.* §§ 1404(a) & 1406(a), favor transferring this case to the District of Columbia.  *See Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) ("Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."); *see also, e.g., Chapman v. Dell, Inc.*, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum").

## CONCLUSION

For these reasons, the Court should transfer this action to the U.S. District Court for the District of Columbia.

Dated: February 9, 2024                                   Respectfully submitted,

                                                          BRIAN M. BOYNTON
                                                          Principal Deputy Assistant Attorney General

                                                          JAMES J. GILLIGAN
                                                          Special Litigation Counsel

Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
CODY T. KNAPP
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202)-305-2677
Fax: (202)-616-8470
Email: cristen.handley@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
CODY T. KNAPP
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202)-305-2677
Fax: (202)-616-8470
Email: cristen.handley@usdoj.gov

## CERTIFICATE OF CONFERENCE

I, Cristen C. Handley, hereby certify that counsel for the parties met and conferred via teleconference regarding this motion on February 5, 2024.  Plaintiffs oppose this motion.  The following counsel participated in this meet and confer:

Margaret A Little
Margot J. Cleveland
*Counsel for the Media Plaintiffs*

Susanna Dokupil
*Counsel for Plaintiff the State of Texas*

Cristen C. Handley
Cody T. Knapp
*Counsel for Defendants*

*/s/ Cristen C. Handley*
CRISTEN C. HANDLEY
Trial Attorney
U.S. Department of Justice

17