IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **THE DAILY WIRE, LLC;**<br><br>**FDRLST MEDIA, LLC; and**<br><br>**THE STATE OF TEXAS, by and through its Attorney General, Ken Paxton,**<br><br>　　　　　*Plaintiffs,*<br><br>　　v.<br><br>**DEPARTMENT OF STATE;**<br><br>**GLOBAL ENGAGEMENT CENTER;**<br><br>**ANTONY BLINKEN, in his official capacity as Secretary of State;**<br><br>**LEAH BRAY, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center;**<br><br>**JAMES P. RUBIN, in his official capacity as Coordinator for the Global Engagement Center of the State Department;**<br><br>**DANIEL KIMMAGE, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department;**<br><br>**ALEXIS FRISBIE, in her official capacity as Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department;**<br><br>**PATRICIA WATTS, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department,**<br><br>　　　　　*Defendants.* | Civil Action No.: 6:23-cv-00609<br><br><br>RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .................................................................................................................. 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

    I.       TEXAS HAS STANDING TO BRING THE CASE ................................................. 3

    II.     TEXAS CAN BRING SUIT IN ANY DISTRICT WITHIN ITS BORDERS ........................... 7

    III.    THE "SUBSTANTIAL EVENTS" TEST IS IRRELEVANT TO THE VENUE ANALYSIS FOR TEXAS'S CLAIMS, AND THE MEDIA PLAINTIFFS' CLAIMS HAVE PENDENT VENUE ................................................................................................... 9

    IV.    THIS COURT HAS VENUE BECAUSE A "SUBSTANTIAL PART OF THE EVENTS" INJURED THE MEDIA PLAINTIFFS IN THIS DISTRICT ............................................. 10

    V.    THE "INTERESTS OF JUSTICE" DO NOT ALLOW FOR TRANSFER OF VENUE BECAUSE VENUE IS PROPER IN THE EASTERN DISTRICT OF TEXAS ....................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. Army Corps of Eng'rs*,
    382 F. Supp. 2d 1301 (N.D. Ala. 2005)................................................................ 8

*Atcom Support LP v. Maria*,
    No. 15-28, 2016 WL 4118914 (D. Del. Aug. 1, 2016) .............................. 10

*Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*,
    50 F. 790 (5th Cir. 1982) .................................................................... 8

*Bennett v. Spear*,
    520 U.S. 154 (1997)........................................................................... 6

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ............................................................. 8

*Career Colleges & Schools of Texas v. Dep't of Educ.*,
    No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023)................................ 10, 11

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019)....................................................................... 6, 7

*Diesel Power Source, LLC v. Crazy Carl's Turbos, Inc.*,
    No. 2:14–cv–00826–DN, 2015 WL 1034231 (D. Utah Mar. 10, 2015).................................. 13

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022)........................................................................... 4

*Florida v. United States*,
    No. 3:21-CV-1066-TKW-EMT, 2022 WL 2431443 (N.D. Fl. Jan. 18, 2022).......................... 8

*Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*,
    No. 13-CV-00797-RM-BNB, 2013 WL 5477165 (D. Colo. 2013)......................................... 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................... 7

*Globe Glass & Mirror Co. v. Brown*,
    888 F. Supp. 768 (E.D. La. 1995) ................................................... 11

*Halcyon Biomed v. Glatt Air Tech.*,
    No. H-19-690, 2019 WL 2420232 (S.D. Tex. June 10, 2019) ............................... 14

*In re Clarke*,
    No. 24-50079, 2024 WL 886953 (5th Cir. Mar. 1. 2024) ..................................... 15

*In re Volkswagen of Am., Inc.* ("*Volkswagen II*"),
    545 F.3d 304 (5th Cir. 2008) ............................................................. 3, 15

*Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ............................................................. 6, 7

*Int'l Cotton Mktg., Inc. v. Commodity Credit Corp.*,
No. 5:08-CV-159-C, 2009 WL 107052345 (N.D. Tex. Feb. 4, 2009) ................................... 11

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006) .................................................................................................. 11

*McClintock v. Sch. Bd. E. Feliciana Par.*,
299 Fed. App'x 363 (5th Cir. 2008) ....................................................................................... 11

*Myers v. Bennett L. Offs.*,
238 F.3d 1068 (9th Cir. 2001) ................................................................................................ 10

*Nabong v. Paddayuman*,
289 F. Supp. 3d 131 (D.D.C. 2018) ........................................................................................ 10

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
308 U.S. 165 (1939) .................................................................................................................. 3

*NetChoice, L.L.C. v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ..................................................................................................... 4

*NetChoice, LLC v. Paxton*,
144 S. Ct. 477 (Mem) (Sept. 29, 2023) ................................................................................. 4, 5

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
734 F.3d 406 (5th Cir. 2013) .................................................................................................... 3

*Seariver Maritime Fin. Holdings, Inc. v. Pena*,
952 F. Supp. 455 (S.D. Tex. 1996) ........................................................................................... 3

*Seville v. Maersk Line*,
53 F.4th 890 (5th Cir. 2022) ................................................................................................... 15

*Smilde v. Snow*,
73 F. App'x 24 (5th Cir. 2003) ................................................................................................. 3

*Stafford v. Briggs*,
444 U.S. 527 (1980) ................................................................................................................ 15

*Texas v. Dep't of Homeland Sec.*,
661 F. Supp. 3d 683 (S.D. Tex. 2023) .............................................................................. 8, 9, 15

*Texas v. Garland*,
No. 5:23-CV-034-H, 2023 WL 4851893 (N.D. Tex. July 28, 2023) ................................... 8, 9

*Texas v. Mayorkas*,
No. 6:23-CV-00001, 2023 WL 5616184 (S.D. Tex. Aug. 29, 2023) ....................................... 8

*Texas v. United States (DAPA)*,
809 F.3d 134 (5th Cir. 2015) .............................................................................................. 3, 10

*Texas v. United States*,
95 F. Supp. 3d 965 (N.D. Tex. 2015) ..................................................................................... 10

*Texas v. United States*,
No. 15-cv-00056-O, 2015 WL 13424776 (N.D. Tex. Jun. 26, 2015) ..................................... 10

*Umphress v. Hall*,
  479 F. Supp. 3d 344 (N.D. Tex. 2020) ............................................................. 10, 11

*Utah v. Walsh*,
  No. 2:23-CV-016-Z, 2023 WL 2663256 (N.D. Tex. March 28, 2023) ..................... 8

*VP, LLC v. Newmar Corp.*,
  No. 11-2813, 2012 WL 6201828 (E.D. La. Dec. 12, 2012) ................................... 11

*Zurich Am. Ins. Co. v. Tejas Concrete & Mins., Inc.*,
  982 F. Supp. 2d 714 (N.D. Tex. 2013) ................................................................... 11

**Statutes**

28 U.S.C. § 1391 ................................................................................................. 2, 7, 9, 10

28 U.S.C. § 1404(a) ..................................................................................................... 3

28 U.S.C. § 1406(a) ................................................................................................. 3, 15

H.B. 20, 87th Leg. (Tex. 2021) ............................................................................... 4, 5

Tex. Bus. & Com. Code Ann. § 120.001 .................................................................... 4

**Other Authorities**

Wright & Miller,
  Fed. Prac. & Proc.: Civil 2d (1994 supp.) ........................................................ 11

Wright & Miller,
  14D Fed. Prac. & Proc. Juris. (4th ed. 2022) ................................................ 3, 8, 10

Contrary to Defendants' claim that venue in the Eastern District of Texas is improper and that this case should be transferred to the U.S. District Court for the District of Columbia, Texas has standing to challenge Defendants' *ultra vires* action, and it resides for venue purposes in this district. Further, a substantial part of the harm inflicted on the Media Plaintiffs occurred in the Eastern District of Texas, making venue doubly proper here. Accordingly, this Court should deny Defendants' Motion to Transfer Venue to the U.S. District Court for the District of Columbia.

## BACKGROUND

Defendants' introductory and background sections of their Motion are inaccurate. Contrary to Defendants' assertions, this case is not "primarily a challenge by two press outlets … concerning policy decisions made by federal officials in Washington, D.C." ECF14 at 1. Rather, this is a joint lawsuit by all three Plaintiffs alleging—with specificity—that Defendants engaged in *ultra vires* activities, injuring both the Media Plaintiffs and the State of Texas. While the Media Plaintiffs also present important independent First Amendment freedom of speech and freedom of press claims, that fact alters neither the State of Texas's claims nor its sovereign interest in this case.

Further, Defendants misrepresent the factual basis underlying Plaintiffs' *ultra vires* claims by selectively quoting from the complaint, *see* ECF14 at 1-2, while ignoring the entirety of the State Department's censorship scheme. *See* ECF1 at ¶¶ 45-180. To be clear, Plaintiffs' complaint is not merely alleging that Defendants provided "cash prizes" to private actors to support the development of domestic censorship technologies, ECF14 at 1, even though the evidence shows that indeed happened. *See e.g.* ECF1 at ¶¶ 125-134, 142-147. Rather, Plaintiffs allege Defendants deliberately engaged in a comprehensive government scheme to suppress disfavored domestic speech and publications "by funding the infrastructure, development, and marketing and promotion of censorship technology and private censorship enterprises." *Id.* at ¶ 1. The 69-page complaint details the breadth of Defendants' past and continuing *ultra vires* actions—conduct that

1

also violates the Media Plaintiffs' First Amendment rights. *See* ECF1.

There are two additional errors in Defendants' background section: First, while Defendants retired the "Disinfo Cloud" platform in 2022, and while the *ultra vires* funding awards Plaintiffs highlighted were made in 2020 and 2021, the complaint establishes that Defendants' *ultra vires* and unconstitutional conduct continues to this day. *See* ECF1 at ¶¶ 84, 160-163, 165, 167, 170-180. And contrary to the State Department's assertion that the complaint alleges the "continuing and ongoing" conduct in a "conclusory fashion," ECF14 at 6, the complaint details how the Global Engagement Center continues to fund the unlawful domestic censorship scheme through many of the same initiatives. *See* ECF1 at ¶¶ 84, 160-163, 165, 167, 170-180.

Second, Defendants suggest Texas cannot establish an injury because some of the technologies and technology companies are "unspecified" or "unidentified." ECF14 at 1. But Plaintiffs need not fully identify the players in Defendants' censorship scheme because, as discussed below, even the limited open-source material currently available to Plaintiffs and cited in the complaint establishes that the State Department's *ultra vires* conduct harms, within this district, Texas's interest in, and ability to, ensure compliance with H.B. 20.

## LEGAL STANDARD

Whether venue is proper against a federal government defendant is governed by 28 U.S.C. § 1391(e)(1):

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, ***or (C) the plaintiff resides if no real property is involved in the action.***

*Id.* (emphasis added).

 "When no special, restrictive venue statute applies, the general venue statute, 28 U.S.C.

§ 1391, controls a plaintiff's choice of venue." *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"),

545 F.3d 304, 312 (5th Cir. 2008). If a case is filed in the wrong division, a district court "shall

dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

it could have been brought." 28 U.S.C. § 1406(a).[1]  As shown below, venue is proper here.

## ARGUMENT

### I.    TEXAS HAS STANDING TO BRING THE CASE.

Texas has standing to bring this case based on its interest in enforcing its sovereign laws.[2]

The Fifth Circuit has held that "States have a sovereign interest in 'the power to enforce and create

a legal code.'  Pursuant to that interest, states may have standing based on (1) federal assertions of

authority to regulate matters they believe they control; (2) federal preemption of state law; and

(3) federal interference with the enforcement of state law, at least where the state statute at issue

regulates behavior or provides for the administration of a state program . . . ." *Texas v. United*

*States (DAPA)*, 809 F.3d 134, 153 (5th Cir. 2015) (cleaned up); *cf. Planned Parenthood v. Abbott*,

734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the

irreparable harm of denying the public interest in the enforcement of its laws.").

---

[1] When venue is proper, a defendant may also move to transfer venue to a more convenient forum pursuant to 28 U.S.C. § 1404(a). Transfer pursuant to § 1404(a), however, is only appropriate if defendants establish "good cause" by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315. Because Defendants have not moved to transfer pursuant to § 1404(a), this Response does not address the "good cause" standard.

[2] Defendants do not challenge the Media Plaintiffs' standing. *See generally* ECF14. It bears noting here that one plaintiff with standing "is sufficient to satisfy Article III's case-or-controversy requirement." *DAPA*, 809 F.3d 134, 151 (5th Cir. 2015). Thus, if the Media Plaintiffs have standing, then Texas also has standing. Nonetheless, Plaintiffs address Texas's standing to demonstrate that Texas provides a basis for venue. It also merits mention that venue and standing are two distinct concepts. *Neirbo Co. v. Bethlehem Shipbuilding Corp*., 308 U.S. 165, 168 (1939), and that "venue [is] determined at the outset of litigation and [is] not affected by subsequent events." *Smilde v. Snow*, 73 F. App'x 24, 26 (5th Cir. 2003). Further, this Court's "authority for determining venue, Section 1391(e), makes no mention of standing," so "arguments as to standing are not probative on the venue issue." *Seariver Maritime Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996). In fact, the only situation in which standing is relevant at the venue-deciding stage is in a case where a plaintiff was "improperly and collusively joined for the purpose of creating venue in the district" or where the defendant asserts "a plaintiff with a frivolous claim" was joined to create venue. Wright & Miller, 14D FED. PRAC. & PROC. JURIS. §3815 (4th ed. 2022). The Defendants do not argue that either exception applies in this case—which they could not do on these facts—and, instead, present a detailed—*albeit* failed—attack on Texas's standing. *See infra* at 3-7.

In this case, Defendants' censorship scheme interferes with Texas's enforcement of H.B. 20, a statute that codifies the State's "fundamental interest in protecting the free exchange of ideas and information in this state."  H.B. 20, 87th Leg. (Tex. 2021) § 1(2). Defendants' censorship scheme undermines Texas's interest in enforcing this law, which requires social media companies with market power to act as common carriers. *See* Tex. Bus. & Com. Code Ann. §§ 120.001 *et seq.*; ECF1 at ¶ 6. Texas has standing where the State Department's actions have both regulated (at least implicitly) matters Texas believes it controls and, in the process, federally preempted the state law codified at H.B. 20. *See* ECF1 at ¶ 237.

Texas's interest in enforcing H.B. 20 is not lessened for standing purposes by the legal challenge pending before the United States Supreme Court. *See NetChoice, LLC v. Paxton*, 144 S. Ct. 477 (Mem.) (Sept. 29, 2023) (granting *certiorari* in part). First, a duly enacted state statute is entitled to a "strong presumption of validity."  *See, e.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022). Thus, Defendants are incorrect to suggest that Texas's standing "rest[s] on pure speculation concerning the Supreme Court's forthcoming ruling." ECF14 at 6. Rather, this Court must presume the validity of H.B. 20 until proven otherwise.

Second, parts of H.B. 20 remain law, regardless of the Supreme Court's decision. Although Defendants point out that enforcement of H.B. 20 is currently enjoined, ECF14 at 8, the story is more complicated. After the Fifth Circuit overturned the district court's ruling enjoining the enforcement of H.B. 20, *see NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), the parties agreed to a stay of the Fifth Circuit's mandate pending review by the Supreme Court.[3] The grant of *certiorari*, however, was more limited than the Fifth Circuit's mandate, and covered only the

---

[3] *See* Appellees' Unopposed Motion to Stay the Mandate Pending Petition for Writ of Certiorari, *NetChoice, L.L.C. v. Paxton*, No. 21-51178 (5th Cir. Sept. 29. 2022), *available at* https://netchoice.org/wp-content/uploads/2022/09/NetChoice-CCIA-Unopposed-Motion-to-Stay-Mandate_Sep292022_Filed-1.pdf.

narrow questions raised in the Solicitor General's amicus brief. *NetChoice, L.L.C. v. Paxton*, 144 S. Ct. 477 (Mem) (Sept. 29, 2023).[4] Therefore, any part of H.B. 20 upheld by the Fifth Circuit but not part of the grant of *certiorari* remains enforceable, regardless of the Supreme Court's decision. It follows, then, that Texas maintains, at minimum, an interest in enforcing the sections of H.B. 20 the Fifth Circuit upheld which are not implicated in the Supreme Court's appellate review.

H.B. 20's transparency requirements, for example, remain in force regardless of the Supreme Court's decision. *See* H.B. 20 at § 120.053. H.B. 20 requires covered social media platforms to report biannually on the instances in which content was removed, deprioritized, or demonetized. *See id.* Such a policy protects Texans from unseen censorship schemes, such as the one challenged here, by informing consumers not only about the number of times the platform acted against illegal or policy-violating content, but also the source of the alert. *See id*. Specifically, the social media platforms must disclose if the alert came from "a government" or "an internal automated detection tool." H.B. 20, § 120.053(b)(2)(A), (C). The State Department's illegal and *ultra vires* censorship scheme interferes with Texas's consumer protection statute and, thus, Texas's sovereign interest in enforcing its laws. Therefore, Texas has standing.

Texas can also show traceability and redressability. Defendants assert that Texas has not shown that "(1) Texas was to take an enforcement action against a social media company and (2) Defendants were to obstruct that enforcement action." ECF14 at 8-9. But this is not the standard.

While there must be "a causal connection between the plaintiff's injury and the defendant's challenged conduct, [traceability] doesn't require a showing of proximate cause or that 'the

---

[4] The Solicitor General's brief presented two questions: "1. Whether the laws' content-moderation restrictions comply with the First Amendment;" and "2. Whether the laws' individualized-explanation requirements comply with the First Amendment." Br. of the United States as Amicus Curiae in Support of Respondents in No. 22-277 and No. 22-555, *NetChoice*, 2023 WL 8600432, at *i (Dec. 7, 2023).

defendant's actions are the very last step in the chain of causation.'" *Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Rather, a plaintiff can satisfy traceability by showing that the challenged action "produce[s] a 'determinative or coercive effect upon the action of someone else,' resulting in injury." *Id.* (quoting *Bennett*, 520 U.S. at 169). In addition, courts find that the injury is traceable to the challenged act when standing "does not rest on mere speculation about the decisions of third parties" but instead "on the predictable effect of [g]overnment action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

Such is the case here. Texas challenges Defendants' *ultra vires* actions in funding a domestic censorship scheme—the known and unlawful breadth and scope of which is detailed in the 69-page complaint. Specifically, Texas alleges Defendants' *ultra vires* censorship scheme interferes with the functioning of H.B. 20 "by funding the infrastructure, development, and marketing and promotion of censorship technology and private censorship enterprises," which, at a minimum, violate H.B. 20's transparency requirements that remain good law. ECF1 at ¶234. At a maximum, the over 360 domestic blacklisting and other censorship technologies funded, developed, and still promoted by the GEC with State Department funds and State-Department-funded resources limit the reach of media outlets on various platforms, in violation of H.B. 20. *See* ECF1 at ¶235. At this stage of the litigation, which tools and technologies discriminate against Texans' speech on technology platforms deemed common carriers under H.B. 20 is not fully known; discovery will likely reveal additional injuries to Texas's sovereign interests. But at this point, the allegations, taken as true, establish that the State Department's *ultra vires* activities interfere in Texas's enforcement of H.B. 20's transparency provisions, and more broadly H.B. 20's mandates against discrimination by common carriers. The harm caused here by the actions of

social media companies is a "predictable effect of [g]overnment action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. at 2566. Thus, Defendants' actions harm Texas's sovereign interest, and Texas has established traceability.[5]

Texas can also show redressability. Redressability requires a plaintiff to show that a favorable decision "is *likely*, as opposed to merely *speculative*," to redress its injury. *Inclusive Cmtys. Proj.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). A plaintiff demonstrates redressability if "the desired relief would lessen" the injury—a "complete[] cure" is unnecessary. *Id.* Here, an injunction would put an end to Defendants' *ultra vires* actions and therefore redress the harm to Texas's sovereign interests in enforcing H.B. 20's transparency mandate.

Accepting Plaintiffs' well-pleaded allegations as true, as this Court must, Texas has shown (1) Defendants' actions interfere with Texas's sovereign interest in enforcing H.B. 20; (2) that sovereign interest encompasses preventing Defendants from aiding common carriers in violating H.B. 20 and the interests that statute protects; and (3) an injunction against Defendants' actions would redress that injury. Thus, Texas has standing to sue, and venue is appropriate in Texas.

## II.     TEXAS CAN BRING SUIT IN ANY DISTRICT WITHIN ITS BORDERS

Defendants assert that Texas does not "reside" for venue purposes in the Eastern District of Texas. They base this argument on 28 U.S.C. § 1391(c)(2), which states: "For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside … if a plaintiff, only in the judicial district in which it maintains its principal place of business." ECF14 at 10 (citing *id.*). For support, Defendants cite

---

[5] In arguing Texas lacks standing, Defendants do not dispute that it acted beyond its statutory authority to administer "foreign affairs." The State Department also does not deny that its Global Engagement Center used funds appropriated or otherwise made available to it for "purposes other than countering foreign propaganda and misinformation that threatens United States national security," in clear violation of Congress' annual appropriation.

cases from courts outside of Texas and the Fifth Circuit.

The Fifth Circuit and its district courts, however, have consistently held that Texas may bring suit in any court within its borders. Nearly 130 years ago, the Fifth Circuit stated—as though it were already axiomatic—that a state government "resides at every point within the boundaries of the state[.]" *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1982). *See also California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) ("A state is ubiquitous throughout its sovereign borders."). Since then, courts have consistently relied on this proposition when adjudicating venue questions involving State plaintiffs. *See, e.g., Texas v. Mayorkas*, No. 6:23-CV-00001, 2023 WL 5616184, at *2 (S.D. Tex. Aug. 29, 2023) ("The Court remains steadfast in its interpretation of Section 1391 and the conclusion that a state is a resident at every point within its borders."); *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *3 (N.D. Tex. March 28, 2023) (same); *Texas v. Garland*, No. 5:23-CV-034-H, 2023 WL 4851893, at *3 (N.D. Tex. July 28, 2023); *Texas v. Dep't of Homeland Sec.*, 661 F. Supp. 3d 683 (S.D. Tex. 2023) ("Texas resides at every point within the boundaries of this State[.]"); *Florida v. United States*, No. 3:21-CV-1066-TKW-EMT, 2022 WL 2431443, at *2 (N.D. Fl. Jan. 18, 2022) (same); *Alabama v. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1328-29 (N.D. Ala. 2005) ("[C]ommon sense dictates that a state resides throughout its sovereign borders[.]"); Wright & Miller, 14D FED. PRAC. & PROC. JURIS. § 3815 (4th ed. 2022) ("A state is held to reside in any district within it.").

"Any other interpretation limiting residency to a single district in the state would defy common sense." *California v. Azar*, 911 F.3d at 570. Thus, in *Texas v. Dep't of Homeland Sec.*, the Southern District of Texas rejected the Federal Defendants' attempt to transfer a case based on nearly identical grounds. *See* 661 F. Supp. 3d 683 (S.D. Tex. 2023). There, Federal Defendants argued—as here—that the State of Texas did not reside in the Victoria Division in the Southern

District, but only in Austin, where it has its principal place of business. *Id.* at 688-89. The Court found persuasive the State's argument that a State is not an "entity" under Section 1391(c)(2) and found, "***consistent with what the Fifth Circuit and every other federal court to have addressed the issue have held***, Texas resides at every point within the boundaries of this State, including the Victoria Division." *Id.* at 689 (emphasis added).

The Northern District of Texas reached the same conclusion in *Texas v. Garland*—that Texas "resides in every district of that state." 2023 WL 4851893, at *3. In its analysis, that court conclusively rejected Defendants' argument—raised again here—that 28 U.S.C. § 1391(c)(2) restricts a sovereign state to its capital for venue purposes, holding that "[b]y its plain terms, Section 1391(c)(2) refers to corporations and unincorporated associations—not sovereign states." *Id.* Accordingly, the court in that case, "join[ed] every other court to consider the issue by finding that a state resides, for venue purposes, in every district within its borders." *Id.* at *6. In short, Texas has venue in the Eastern District of Texas according to every applicable precedent.[6]

## III.   THE "SUBSTANTIAL EVENTS" TEST IS IRRELEVANT TO THE VENUE ANALYSIS FOR TEXAS'S CLAIMS, AND THE MEDIA PLAINTIFFS' CLAIMS HAVE PENDENT VENUE.

Where 28 U.S.C. § 1391(e)(1)(C) applies—as here—there is no requirement for a state plaintiff that a "substantial part of the events or omissions giving rise to its claims occurred" in the district. *Texas v. Dep't of Homeland Sec.*, 661 F. Supp. 3d at 688 (quoting 28 U.S.C. § 1391(e)). If this Court finds that Texas has standing, Texas's claims are proper in any venue within its borders, and this Court need not reach the "substantial part of the events" question.

If Texas's claims are properly venued, then the other Plaintiffs' claims are also properly venued based on the doctrine of pendent venue. "Pendent venue allows a court to hear a claim that

---

[6] Venue is independently proper in this District because a substantial part of the events or omissions giving rise to Texas's claims occurred here because Texas has a sovereign interest in enforcing H.B. 20 in this district.

would otherwise not have proper venue, provided it is joined in a suit with a claim that is properly venued, and that the claims arise out of a common nucleus of operative facts." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3808 n.27 (4th ed. 2022) (quoting *Atcom Support LP v. Maria*, No. 15-28, 2016 WL 4118914, at *6 (D. Del. Aug. 1, 2016)); *see also Nabong v. Paddayuman*, 289 F. Supp. 3d 131, 136-37 (D.D.C. 2018) (noting that considerations of judicial economy and convenience weighed in favor of asserting pendent venue).

Alternatively, if the Court concludes that Texas lacks standing, this case may still proceed in this district based on Media Plaintiffs' standing because only one Plaintiff needs standing for all to proceed. *DAPA*, 809 F.3d 134, 151 (5th Cir. 2015) ("One party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). Defendants have not challenged the Media Plaintiffs' standing here, nor could they. Accordingly, Texas's claims may move forward based on the Media Plaintiffs' standing.

## IV. THIS COURT HAS VENUE BECAUSE A "SUBSTANTIAL PART OF THE EVENTS" INJURED THE MEDIA PLAINTIFFS IN THIS DISTRICT.

Venue is independently proper in this district because "a substantial part of the events or omissions giving rise" to The Daily Wire and The Federalist's claims occurred here. *See* 28 U.S.C. §§ 1391(b)(2); (e). As Texas district courts have made clear, under this standard, venue is proper where unlawful conduct "imposes its burdens." *See e.g.*, *Career Colleges & Schools of Texas v. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) (Pittman, J.); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (Pittman, J); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.), *rev'd on other grounds by* No. 15-cv-00056-O, 2015 WL 13424776 (N.D. Tex. Jun. 26, 2015); *see also Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001).

Plaintiffs need only show that their chosen venue is a proper venue. And "[a]ccording to

the Fifth Circuit, 'the chosen venue does not have to be the place where the most relevant events took place,' but only where a 'substantial part of the events or omissions occurred.'" *Zurich Am. Ins. Co. v. Tejas Concrete & Mins., Inc.*, 982 F. Supp. 2d 714, 722 (N.D. Tex. 2013) (quoting *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 Fed. App'x 363, 365 (5th Cir. 2008)). "The 'substantial part of the events or omissions test does not require that the chosen venue be the *best* venue … the selected district must simply have a substantial connection to the claim.'" *Id.* at 722-23 (quoting *VP, LLC v. Newmar Corp.*, No. 11-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012)) (internal quotation marks omitted) (emphasis added); *see also Globe Glass & Mirror Co. v. Brown*, 888 F. Supp. 768, 770 (E.D. La. 1995) (quoting Wright & Miller, FED. PRAC. & PROC.: CIVIL 2d § 3806 (1994 supp.)) (stating that "there can be more than one district in which a substantial part of the events giving rise to the claim occurred").

Further, in determining venue, the Court may consider "the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities." *See Umphress v. Hall*, 479 F. Supp. 3d 344, 352 (N.D. Tex. 2020). At this stage, the Media Plaintiffs also "need not exhaustively prove venue is appropriate but only need[] to make a prima facie showing." *Career Colleges*, 2023 WL 2975164 at *1; *see also Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (applying this standard for personal jurisdiction). Additionally, "a court should … accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the plaintiff's favor." *Int'l Cotton Mktg., Inc. v. Commodity Credit Corp.*, No. 5:08-CV-159-C, 2009 WL 107052345, at *2 (N.D. Tex. Feb. 4, 2009) (Cummings, J.).

Applying those standards establishes the propriety of venue over the Media Plaintiffs' claims. As the complaint details, Defendants' censorship scheme reduces the Media Plaintiffs' "reach, readership, and circulation of their reporting and speech" due to Defendants'

11

unconstitutional and *ultra vires* conduct. ECF1 at ¶¶ 280-81. A substantial part of the harm to Media Plaintiffs falls within this district (and division) because "Media Plaintiffs rely heavily on social media outlets, web browsers, internet search tools, and other computer technology to distribute their content," *id.* at ¶ 44, including throughout Texas and in this district, with hundreds of The Daily Wire subscribers residing in Tyler, Texas alone. Exh. 7, Herr Decl. at ¶3. At a minimum, at least two censorship technologies funded, tested, marketed, and promoted by Defendants—NewsGuard and GDI's blacklists—target Media Plaintiffs "thereby reducing their circulation, readership, and reach, and otherwise negatively impacting their operations," ECF1 at ¶ 123, in this district and division.

Contrary to Defendants' claim, this case is *not* about "policy" decisions made by the State Department in DC: Nothing at issue in this lawsuit pertains to foreign policy decisions made by the State Department pursuant to its lawful mandate. When Defendants misappropriate funds and allocate their enormous resources to blacklisting domestic news media, it should come as no surprise that proper venue lies where its *ultra vires* conduct had its unlawful domestic effects.

Significantly, the nature of Defendants' *ultra vires* and unconstitutional censorship scheme is such that the locus of the intended harm is where the Media Plaintiffs' audience resides and not in Washington, DC. The various tools and technologies funded, developed, tested, promoted, and marketed by Defendants operate to keep social media and web browser users—including those in this district (and division)—from accessing the Media Plaintiffs' reporting locally. For instance, when Media Plaintiffs recently reported on Pope Francis's removal of Bishop Joseph Strickland from the Diocese of Tyler, Texas,[7] the blacklisting and reduced circulation caused by Defendants'

---

[7] *See* Exh. 1, Bree Dail, *"The Decision Was Made': Texas Bishop Fired by Pope Says He Declined to Resign, Wasn't Given Reason for Dismissal*, The Daily Wire (Nov. 14, 2023); Exh. 2, Carina Benton, *The Vatican Continues to Please the Rainbow Mafia While Mercilessly Attacking the Orthodox, the Faithful, and the Traditional*, (Nov. 18, 2023).

censorship scheme injured the Media Plaintiffs in this division where their audience resides. That Defendants launched their censorship scheme in part from Washington, DC does not alter that conclusion. *See Diesel Power Source, LLC v. Crazy Carl's Turbos, Inc.*, No. 2:14–cv–00826–DN, 2015 WL 1034231 at *10 (D. Utah Mar. 10, 2015) (holding "acts that are physically performed on the Internet can 'occur' in the forum state in order to establish proper venue").

Defendants may complain that the ubiquitous nature of the internet might render it subject to venue throughout the U.S. This Court need not decide whether venue in internet cases would be universal because there are additional independent connections to this district. First, beyond the nationwide impact of Defendants' censorship scheme, the State Department's *ultra vires* and unconstitutional conduct uniquely harmed the Media Plaintiffs in Texas. According to GDI's CEO, the State Department's funding of GDI, through the U.S.-Paris Tech Challenge, strengthened its "infrastructure." ECF1 at ¶ 130-31. Following that State Department award, GDI partnered with the Global Disinformation Lab (GDIL) at the University of Texas, hiring students in Texas to apply GDI's methodology to rate the various media outlets and write "a separate report that designated the supposed top ten 'riskiest' American online news outlets." *Id.* at ¶ 115. The December 2022 report, entitled "Disinformation Risk Assessment: The Online News Market in the United States," "targeted Media Plaintiffs, rating them in the top ten of the supposedly 'riskiest' outlets."[8] *Id.* at ¶ 116; *id.* at n.80. Significantly, that report was researched, written, and published in Texas, and distributed throughout the State via the Texas-based webpage of the University of Texas, including in this district (and division). *See id.*

Further, GDI operates in Texas through its American partner, Danny Rogers and

---

[8] *See* Exh. 3 (excerpt of top ten "riskiest" and "least risky" American outlets from Brief: Disinformation Risk in the United States Online Media Market, October 2022, GDI).

Disinformation Index Inc., which is both incorporated and headquartered in Texas.[9] In fact, GDI's

contract with the University of Texas identified Disinformation Index, Inc., with a San Antonio,

address, as GDI's representative.[10] It is reasonable to infer that the GEC grant helped strengthen

GDI's infrastructure in both England and Texas. GDI's operations in Texas thus provide a further

basis to conclude that "a substantial part of the events or omissions" occurred here.

Second, Plaintiff The Daily Wire is a Texas limited liability company, *Id.* at ¶ 11, with a

registered address and registered agent in Texas. Exh. 7, Herr Decl. at ¶ 5. Further, two employees

provide services to The Daily Wire in Texas, and hundreds of subscribers reside in Tyler, Texas

alone with more subscribers in the district. *Id.* at ¶¶ 3, 4. As such, The Daily Wire, LLC has a

presence here and "a substantial part of the events and omissions" inflict harm on The Daily Wire

in this district. When added to the harm inflicted by Defendants' *ultra vires* and unconstitutional

censorship scheme occurring in this district (and division) through reduced circulation, venue is

clearly appropriate here. Accordingly, venue is proper over the Media Plaintiffs' claims under 28

U.S.C. § 1391's "substantial part of the events" standard.[11]

## V. THE "INTERESTS OF JUSTICE" DO NOT ALLOW FOR TRANSFER OF VENUE BECAUSE VENUE IS PROPER IN THE EASTERN DISTRICT OF TEXAS.

Finally, Defendants argue that this Court should transfer venue to the D.C. District Court

"in the interest of justice" under 28 U.S.C. § 1406(a). ECF14 at 14. However, this Court may only

reach the question of transfer "in the interest of justice" if venue is improper. *Texas v. Dep't of*

---

[9] See Exh. 4, Gabe Kaminsky, "Disinformation" Tracker Paid State Funded University $90,000 for Conservative Blacklist Report, The Washington Examiner (Jun. 1, 2023); Exh. 5 Disinformation Index Inc., Tax Exempt Organization Search Details, Internal Revenue Service; Exh. 6 Disinformation Index Inc., Full Filing - Nonprofit Explorer, ProPublica.

[10] *See* Exh. 4, *supra* at 14 n.9.

[11] While the Media Plaintiffs maintain there is an independent basis for venue over their claims, if this Court agrees that Texas has standing, it need not consider whether an independent basis of venue exists for The Daily Wire and The Federalist's claims because there would be pendent venue over the First Amendment claims. *See Halcyon Biomed v. Glatt Air Tech.*, No. H-19-690, 2019 WL 2420232 at *8 (S.D. Tex. June 10, 2019) (explaining that pendent venue allows a court to hear claims arising out of a common nucleus of operative facts).

*Homeland Sec.*, 661 F. Supp. 3d at 689. Because venue is proper in this district for the aforesaid reasons, this Court need not reach the question of transfer "in the interest of justice." *Id.* at 690.

Should this Court instead reject both Texas and the Media Plaintiffs' bases of venue, this case should be dismissed without prejudice. While Plaintiffs do not contest Defendants' assertion that the case could have originally been brought in the D.C. District Court, Fifth Circuit precedent holds that "[w]here venue is improper, the district court should generally dismiss the case." *Seville v. Maersk Line,* 53 F.4th 890, 894 (5th Cir. 2022). Further, while a court retains discretion to instead transfer a case "in the interest of justice," *id.*, Defendants do not explain why transfer would be more "in the interest of justice" than dismissal. *See* ECF14 at 14-15. Instead, Defendants posit that venue is more appropriate in D.C. because Defendants and witnesses reside there and because that is "where principal funding decisions challenged in the complaint were made." *Id.* But those rationales neither speak to the "interest of justice," nor account for the weight and deference afforded a plaintiff's choice of forum. *In re Clarke*, No. 24-50079, 2024 WL 886953, at *9 n.24 (5th Cir. Mar. 1. 2024). Transfer also cannot be squared with the legal principle that a plaintiff is entitled to his choice of venue if otherwise proper, *Volkswagen II*, 545 F.3d at 315. Further, transferring this case to D.C. would defeat the Congressional purpose behind the amendment to § 1391(e) for official capacity suits, namely, to ensure Americans are not forced to travel to Washington, DC to sue federal officials. *See Stafford v. Briggs*, 444 U.S. 527, 542-544 (1980) (Congress was incensed that Americans would have to sue in D.C. to hold officials accountable for their acts.) The Court need not decide that question as venue is proper in the Eastern District of Texas.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue should be DENIED.

DATED: March 14, 2024                          Respectfully submitted,

/s/ *Margaret A. Little*
Margaret A. Little
Lead Attorney
Senior Litigation Counsel
Connecticut Bar # 303494
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238
Peggy.Little@ncla.legal

/s/ *Margot J. Cleveland*
Margot J. Cleveland,
Of Counsel
Michigan Bar #P83564
NEW CIVIL LIBERTIES ALLIANCE
Margot.Cleveland@ncla.legal

/s/ *Casey Norman*
Casey Norman
*Pro hac vice pending*
Litigation Counsel
New York Bar #5772199
NEW CIVIL LIBERTIES ALLIANCE
Casey.Norman@ncla.legal

*Attorneys for Plaintiffs The Daily Wire
Entertainment LLC and FDRLST Media LLC*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General of Texas

GRANT DORFMAN
Deputy First Assistant Attorney General of
Texas

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS

Chief, Special Litigation Division

*/s/ Susanna Dokupil*

SUSANNA DOKUPIL
Lead Attorney
Special Counsel
Texas State Bar No. 24034419

AMY S. HILTON
Special Counsel
Texas State Bar No. 24097834

JOHNATHAN STONE
Special Counsel
Texas State Bar No. 24071779

*Attorneys for Plaintiff the State of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 14, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Margot J. Cleveland*

Margot J. Cleveland