# Exhibit 3

## **DECLARATION OF DR. DANIEL ROGERS**

1. My name is Dr. Daniel Rogers. I am a resident of the state of New York. I am the Co-founder and a Director of the Disinformation Index Ltd. ("GDI"). I have personal knowledge of the facts set forth herein. I have also reviewed the complaint and preliminary injunction in *The Daily Wire, LLC v. Department of State*, Case No. 6:23-cv-00609 (E.D. Tex.) (Dkt. 1 and 11), with special focus on allegations related to GDI.

2. GDI is a not-for-profit company based in London, United Kingdom. The main goal of GDI's work is to provide independent, neutral disinformation risk data to digital advertisers around the world, enabling them to make more informed brand safety decisions regarding their open web programmatic advertising purchases. GDI uses both human review and artificial intelligence to assess disinformation risk and provide risk ratings to brands and advertising partners to aid in their decision making. Our work is analogous to the role bond ratings agencies play in informing bond traders on purchase decisions, and is in keeping with the principles of both free markets and free speech.

3. In 2021, the U.S. State Department's Global Engagement Center collaborated with various European governments and international organizations, including the North Atlantic Treaty Organization (NATO), to sponsor the U.S.-Paris Tech Challenge. The challenge sought to fund organizations based in the European Economic Area and the United Kingdom to advance the development of technologies that combat disinformation and propaganda globally. Only organizations based in those locations were eligible to apply. Winners received a subgrant from Park Advisors, a GEC grantee.

4. GDI participated in the U.S.-Paris Tech Challenge and was selected as one of three finalists. As part of that selection, GDI received a $100,000 award to help fund the

development of our technology.  The agreed-upon objective for this funding was to expand GDI's disinformation risk measurement to a broader set of countries in East Asia and Europe, within China and Russia's spheres of influence, to enable advertisers in those markets to make similarly informed brand safety decisions about where they were buying ads, in line with global geopolitical strategic aims of the United States.  GDI previously had established this technology, which originally operated in six European languages, but the goal of the grant was to expand it into additional languages associated with the Chinese and Russian spheres of influence.  The objective of the grant did not include expanded disinformation risk measurement in the United States, and GDI has a strict policy not to use funding from any government around the world to assess their own media markets, in accordance with principles of free speech and free press.

5.     GDI used the funding from the U.S.-Paris Tech Challenge to advance the artificial intelligence technology we had previously created to recognize additional languages and to train GDI classifiers on local and culturally relevant adversarial narratives in those regions for use in risk measurement.  Specifically, GDI expanded its risk measurement to six new languages - Chinese, Japanese, Korean, Vietnamese, Russian, and Ukrainian. The GDI team also used funding from the U.S.-Paris Tech Challenge to train the program with specific disinformation content identified in those languages to help improve the model's performance in translating that type of content at scale.  The work was successful and GDI was able to greatly increase the precision of its translations for those six languages.

6.     The complaint and preliminary injunction include several incorrect statements about how GDI used the funds from the U.S.-Paris Challenge.  For example, the complaint states, "the U.S.-Paris Challenge awarded cash prizes to GDI which blacklisted Media Plaintiffs" (¶ 126).  This is not true for several reasons.  First, the complaint defines "GDI" as the

2

Disinformation Index Inc. (¶3).  Disinformation Index Inc. is the United States-based affiliate of GDI, which did not receive any funding from the U.S.-Paris Tech Challenge.  The funding from the U.S.-Paris Tech Challenge was awarded to the London based company Disinformation Index Ltd.  Disinformation Index Inc. had no role in the receipt or use of funding from the U.S.-Paris Tech Challenge.  Second, no portion of the funds that GDI received from the U.S.-Paris Challenge was used to "blacklist" any U.S. entity.  GDI provides data to advertisers around the world to inform their brand safety risk decisions – GDI has neither the capability nor remit to "blacklist" any media entities.  All buying decisions are made by the advertising buyers themselves, in accordance with free market principles.  Third, the $100,000 U.S.-Paris Tech Challenge award was used to add language capabilities in six languages, to my knowledge, in which neither Media Plaintiff publishes content, for locations outside of the United States.

7.  The motion for a preliminary injunction also states that "GDI used some of the $100,000 State Department award to fund the infrastructure supporting the Dynamic Exclusion List" (p. 13).  This is also not true.  GDI's Dynamic Exclusion List was not funded by the State Department or any State Department-affiliated entity.  GDI's infrastructure costs were borne entirely out of other, private sources of funding.  Additionally, GDI's Dynamic Exclusion List is a product of the U.S. entity, Disinformation Index, Inc.; as described above, the U.S.-Paris Tech Challenge award was awarded to Disinformation Index, Ltd., in the United Kingdom.

8.  The complaint incorrectly implies a connection between GDI's Dynamic Exclusion List and our 2022 Disinformation Risk Assessment Report for the United States.  GDI's Dynamic Exclusion List is a non-public source that is updated monthly to capture publications with a high risk for disinformation around the world.  GDI's Disinformation Risk Assessment Report for the United States was published publicly in November 2022 and

reviewed sixty-nine U.S. news sites, scoring them for the degree to which they presented a risk of disinforming their readers.  In that report, GDI included a list of the 10 least risky and the 10 most risky of only those sixty-nine news sites manually reviewed for the purposes of that report.  The report was completely independent of the Dynamic Exclusion list and was supported by private funds; there is no correlation between risk as identified in the report and any site's inclusion in or exclusion from GDI's Dynamic Exclusion List.

9. The complaint also discusses Disinfo Cloud.  To my knowledge, GDI's technology was never included on the Disinfo Cloud platform.  The entire Disinfo Cloud project appears to have been discontinued in 2021.

10. The full extent of GDI's connection to Disinfo Cloud, to my knowledge, consists of GDI's brief mention in a blog post discussing the winners of the U.S.-Paris Tech Challenge, which has since been taken offline, and a retweet on the Disinfo Cloud Twitter account of GDI's announcement of a partnership with NELEZ. (Complaint, ¶ 87).

11. GDI has not been involved with the Silicon Valley Engagement initiative outlined in the complaint, nor does GDI have, or has ever had, any relationship with Becera.

12. Entirely independent of the U.S.-Paris Tech Challenge grant, GDI received a grant from the National Endowment for Democracy (NED) to perform specific media market analyses in India, Turkey, Thailand, Bangladesh, Columbia, Malaysia, Mexico, Nigeria, the Philippines, Tanzania, Ghana, Algeria, Tunisia, Morocco, Taiwan, and Vietnam, as well as the expansion of our translation capabilities to four non-roman alphabet languages, including multiple dialects of Arabic.  To my knowledge, neither Media Plaintiff publishes content in any of those countries, nor in any of the aforementioned non-European languages.

13. Also unrelated to the U.S.-Paris Tech Challenge, GDI was invited, prior to the Challenge and the grant from NED, to consult with the World Federation of Advertisers as part of their Global Alliance for Responsible Media (GARM) effort, which was created by brands such as Procter and Gamble and others to devise industry wide brand safety standards across multiple categories. None of our work providing subject matter expertise to the GARM community was supported by any funds from the State Department; not only would it go against our aforementioned policies and specific statements of work, but it also occurred before the U.S.-Paris Tech Challenge award was issued.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in the state of New York on March 14, 2024.

_____
Dr. Daniel Rogers