IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

THE DAILY WIRE, LLC *et al.*,

          Plaintiffs

    v.

UNITED STATES DEPARTMENT
OF STATE *et al.*,

          Defendants.

Civil Action No. 6:23-cv-00609 (JDK)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel
Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

DOROTHY M. CANEVARI
CRISTEN C. HANDLEY
CODY T. KNAPP
ARJUN MODY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: (202) 451-7723
Email: arjun.a.mody@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................................1

ARGUMENT........................................................................................................................................2

I.       Plaintiffs' standing and the merits of their claims are not "coterminous."..................2

II.      Plaintiffs lack standing...................................................................................................3

         A.      Texas lacks standing. ...........................................................................................3

         B.      Media Plaintiffs lack standing. ...........................................................................4

                 1.      The allegations regarding NewsGuard and GDI do not establish
                         standing..................................................................................................4

                 2.      Plaintiffs' attempts to undermine the declarations in support of the
                         motion to dismiss are unpersuasive. ...................................................7

                 3.      The Court should disregard Plaintiffs' new allegations, which are in
                         any event insufficient to establish standing........................................9

III.     Plaintiffs have not identified any final agency action...................................................11

IV.      Jurisdictional discovery is not warranted. ...................................................................12

CONCLUSION..................................................................................................................................12

**TABLE OF AUTHORITIES**

**CASES**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982)................................................................................2

*AGC of Am., Inc. v. FAR Council*,
  2024 WL 1078260 (W.D. La. Mar. 12, 2024) ...................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................10

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................................................6

*Branch v. CEMEX, Inc.*,
  2012 WL 2357280 (S.D. Tex. June 20, 2012), *aff'd*, 517 F. App'x 276 (5th Cir. 2013)........................4

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) .................................................................................................4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)................................................................................................6

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019)...........................................................................................7

*Freeman v. United States*,
  556 F.3d 326 (5th Cir. 2009)...............................................................................12

*GLO v. Biden*,
  71 F.4th 264 (5th Cir. 2023).................................................................................2

*In re Enron Corp.*,
  761 F. Supp. 2d 504 (S.D. Tex. 2011) .................................................................9

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
  946 F.3d 649 (5th Cir. 2019).................................................................................6

*Jaraba v. Blinken*,
  568 F. Supp. 3d 720 (W.D. Tex. 2021)................................................................9

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021)...............................................................................12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................6

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ..............................................................................................12

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ...............................................................................................7

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ...............................................................................................4

*Pickett v. Tex. Tech Univ. Health Sci. Ctr.,*
    37 F.4th 1013 (5th Cir. 2022) ................................................................................2

*Sierra Club v. Peterson,*
    228 F.3d 559 (5th Cir. 2000) ................................................................................12

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...............................................................................................3

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................................ 2, 3

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ...............................................................................................4

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.,*
    778 F.3d 502 (5th Cir. 2015) ................................................................................3

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021), *rev'd and remanded*, 597 U.S. 785 (2022) ...................................................7

*U.S. ex rel. Vuyyuru v. Jadhav,*
    555 F.3d 337 (4th Cir. 2009) ................................................................................2

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) ................................................................................2

**STATUTES**

22 U.S.C. § 2656 note (Global Engagement Center) ..............................................................................12

## INTRODUCTION

The complaint focused largely on GEC's interactions with two private companies—NewsGuard and GDI—whose products, Plaintiffs claim, are used by other private parties, injuring Media Plaintiffs' economic and First Amendment interests and Texas's sovereign interests. As explained in the government's motion to dismiss, that speculative theory cannot establish standing as a matter of law. As for Media Plaintiffs, there is no concrete, certainly impending injury-in-fact as required for prospective injunctive relief. Moreover, any such injury would depend on the independent actions of third parties and is therefore not traceable to Defendants or redressable by this Court. As for Texas, none of the alleged conduct interferes with its enforcement of H.B. 20, and even if it did, Texas is not currently enforcing H.B. 20, and this litigation will not change that reality. Plaintiffs also lack standing as a factual matter because the record shows that GEC did not fund GDI's relevant technology or NewsGuard's ratings, neither of which "censor" anyone in the first instance.

Underscoring all of that, Media Plaintiffs do not cite a single example in which an internet user could not access their content, or an advertiser chose not to spend money on their websites, as a result of Defendants' conduct—let alone an example of that happening now or imminently. Likewise, Texas has not offered any example of a company violating H.B. 20, or of Texas's inability to enforce its law against such a hypothetical company, as a result of Defendants' conduct. Instead, Plaintiffs in their response recycle the same theories of speculative and conclusory harm—far-removed from any of Defendants' alleged conduct—that the government has already rebutted. Plaintiffs also improperly raise entirely new allegations about third parties and third-party technologies that do not appear in the complaint, many of which Plaintiffs do not even attempt to tie to any concrete injury to themselves. The Court should not consider these new allegations, but even if it does, the allegations suffer from the same problems as those regarding NewsGuard and GDI because the new theories of harm similarly depend on the independent actions of private third parties. Finally, Plaintiffs fail to identify

the final agency action they challenge, which forecloses their APA claim.

At bottom, Plaintiffs' opposition and the nearly six-hundred pages of exhibits attached to it confirm that Plaintiffs seek to use this litigation to air generalized grievances largely about the conduct of third-party private companies, in contravention of Article III's case-or-controversy requirement. The Court should dismiss the complaint in its entirety for lack of subject-matter jurisdiction.

## ARGUMENT

### I.    Plaintiffs' standing and the merits of their claims are not "coterminous."

A court must confirm its jurisdiction—including "Article III standing"—before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).[1] And, as Plaintiffs agree, a court can resolve factual disputes in deciding whether jurisdiction exists. Mot. (ECF 33) at 14–15; Opp. (ECF 41) at 4. Nevertheless, Plaintiffs argue that the government's factual attack on jurisdiction is "inextricably intertwined with the merits," and therefore the Court should wait to decide it. Opp. at 4–5. Not so. The authorities Plaintiffs cite for that proposition involve an entirely different scenario— that in which "the subject-matter jurisdiction and merits questions are coterminous." *Pickett v. Tex. Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022). That is true if "subject matter jurisdiction is derived from the same statute as the cause of action," or if the "legal issues" relevant to jurisdiction and merits "are *identical*." *Id.* at 1031.[2] Neither circumstance is present here. Plaintiffs' asserted basis for subject-matter jurisdiction does not derive from a statutory cause of action, and Plaintiffs' standing to bring this lawsuit turns on legal issues distinct from the merits of their claims. That is, whether

---

[1] Internal quotations and citations omitted throughout this brief.

[2] In *Pickett*, "the merits question—whether Pickett stated ADA claims—[was] the first element of the jurisdictional question." 37 F.4th at 1031. Plaintiffs' other authorities are similarly inapposite; none involved a motion to dismiss for lack of standing based on a factual attack. *See Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("[D]efendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action . . . ."); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009) (jurisdiction turned on whether particular statutory provision was met); *Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) (same); *GLO v. Biden*, 71 F.4th 264, 277 (5th Cir. 2023) (Graves, J., concurring in part) ("Here, the . . . Defendants brought a facial challenge, not a factual challenge, to . . . standing.").

Plaintiffs have identified a source of ongoing or imminent injury, caused by Defendants' conduct, and redressable by this Court, is a different question than whether Defendants have violated Plaintiffs' First Amendment rights, have complied with the APA, or are exceeding the bounds of their statutory authority. To be sure, some of the same facts are relevant to standing and to the merits—as is routinely the case when a plaintiff argues that a constitutional violation automatically establishes an injury—but that does not mean the standing and merits inquiries here turn on "identical" "legal issues"—far from it. As the Supreme Court explained in *Steel Co.*, this Court should address standing before non-jurisdictional issues. 523 U.S. at 101.

## II.        Plaintiffs lack standing.

Plaintiffs have failed to "clearly . . . allege facts demonstrating" standing, as they are required to "at the pleading stage." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have also failed to establish standing by a preponderance of the evidence as required to survive a factual attack under Rule 12(b)(1). *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

### A.  Texas lacks standing.

Contrary to Plaintiffs' assertion that the Court does not need to resolve Texas's standing if the Media Plaintiffs have standing, Opp. at 24, the Court must decide whether Texas has standing because Plaintiffs premised venue in this District on Texas's presence in this lawsuit. *See* Compl. ¶ 8; Mot. to Transfer (ECF 14) at 1. And if Texas lacks standing, venue cannot be based on Texas's claims or its residence. *AGC of Am., Inc. v. FAR Council*, 2024 WL 1078260, at *7 (W.D. La. Mar. 12, 2024) (holding that venue was improper after concluding that the court lacked jurisdiction over the venue-creating plaintiff's claims, and collecting similar cases); *see* Mot. to Transfer Reply (ECF 40) at 1.

Texas lacks standing because none of the alleged conduct prevents social media companies from complying with any of H.B. 20's provisions. Mot. at 16. If H.B. 20's content-moderation provisions prohibit social media companies from using certain technologies in particular ways, those

companies can act accordingly. The same is true for H.B. 20's "transparency" provisions (which are not mentioned in the complaint) that require companies to explain content-moderation decisions. In short, none of Defendants' conduct affects, much less actively interferes with, any company's decision to follow Texas law, or Texas's ability to enforce its law against would-be violators.[3] Texas's bare speculation and conclusory assertions that corporations might independently choose to violate state law are patently insufficient to meet any of the standing requirements. Underscoring the implausibility of that theory, Plaintiffs fail to offer even a single instance of a company that is in fact currently violating its law as a result of Defendants' conduct.[4]

Finally, as the government has explained at length, all of this assumes H.B. 20 is currently being or will imminently be enforced, which is not the case. Mot. at 17–18; Mot. to Transfer at 5–6.

## B.  Media Plaintiffs lack standing.

### 1.  The allegations regarding NewsGuard and GDI do not establish standing.

**Injury-in-fact.** Plaintiffs have not established a "real and immediate threat of repeated injury" as required for prospective injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *City of L.A. v. Lyons*, 461 U.S. 95 (1983). The theory of injury to Media Plaintiffs pled in the complaint focused primarily on two subgrants that Defendants issued years ago to GDI and NewsGuard and then— without explaining this leap in logic—focused on GDI and NewsGuard products unrelated to Defendants' grants and alleged that those products are used by other private companies in a way that

---

[3] Plaintiffs confusingly argue that they need not show that Defendants "induced" companies to violate H.B. 20, Opp. at 27, but that is Plaintiffs' entire theory of injury. *See* Compl. ¶ 237 ("Defendants . . . induce social media companies to violate HB 20."). In any event, Plaintiffs show no causal connection between Defendants' alleged actions and Texas's alleged injury.

[4] Plaintiffs assert for the first time, in a one-sentence footnote, a "procedural injury" to Texas from the APA claim. Opp. at 24 n.54. Not only is this injury not referenced in Plaintiffs' complaint, but a "one-sentence footnote briefly mentioning [an] issue . . . is insufficient to raise" it. *Branch v. CEMEX, Inc.*, 2012 WL 2357280, at *12 n.8 (S.D. Tex. June 20, 2012), *aff'd*, 517 F. App'x 276 (5th Cir. 2013). In any event, the argument fails as a matter of law because "deprivation [of] a procedural right *in vacuo* [] is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

causes Media Plaintiffs economic and First Amendment harms. Compl. ¶¶ 125–32 (GDI), ¶¶ 142–47 (NewsGuard). Plaintiffs also pointed to various GEC initiatives that are unconnected to any particular harm to Media Plaintiffs. But none of that establishes actual, concrete, and ongoing or imminent harm to Media Plaintiffs. Mot. at 19–20.

In response, Plaintiffs fail to explain how those subgrants, from years ago, cause them *ongoing* or *future* injury. Plaintiffs also fail to rebut the core fact in the government's submitted declarations: both subgrants were used for the sole purpose of countering foreign disinformation circulated overseas that harms U.S. national security. Plaintiffs do offer a grab bag of purported injuries based on "still-available" Internet content such as years-old Twitter posts written by GEC's grantee on an account GEC does not control (Opp. at 12); a years-old video of the U.S.-Paris tech challenge hosted on a third-party website (*id.* at 13); an academic article written by a third party and linked from a State Department website that used NewsGuard in conducting a study (*id.* at 15); a link to a third-party think tank website that in turn describes GDI and links to GDI's website (*id.*); and generalized allegations about GEC's private-sector engagement work, untethered to Media Plaintiffs (*id.* at 17). Plaintiffs do not articulate or provide a single example of how any of the above—none of which directly references Media Plaintiffs at all—is in fact causing them injury. Nor have they alleged or established that internet users cannot access their content as a result of NewsGuard's ratings, which do not block any content and simply provide a score and additional context for news articles, or GDI's non-public Dynamic Exclusion List, which similarly does not prevent readers from accessing the Daily Wire's or Federalist Media's (or anyone else's) websites. Skibinski Decl. ¶ 41 ("NewsGuard does not censor any content. . . . [It] offers platforms, search engines, internet users, and others an alternative to blocking or censoring content."); *id.* ¶ 12 ("In all cases, [buying] decisions are entirely up to the advertiser."); Rogers Decl. ¶ 6 ("GDI provides data to advertisers around the world. . . . GDI has neither the capability nor remit to 'blacklist' any media entities. All buying decisions are made by the

5

advertising buyers themselves, in accordance with free market principles.").

**Traceability.** Standing cannot be premised on injury caused by "the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 169 (1997); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649 (5th Cir. 2019). Thus, where, as here, the "plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). Relatedly, as the Fifth Circuit has held, even "chains of causation with at least two links" fail to establish standing. *Inclusive Cmtys.*, 946 F.3d at 658 (collecting cases). These principles foreclose Plaintiffs' theories of harm, which depend on at least three links of actions taken by third parties. Foremost, Defendants were not involved in the development of NewsGuard's or GDI's products of which Plaintiffs complain. Skibinski Decl. ¶ 17; Rogers Decl. ¶¶ 6–8. In other words, Defendants' conduct has no connection—let alone a "causal" one—to how NewsGuard rates the credibility of Media Plaintiffs and whether Media Plaintiffs are included in GDI's non-public Dynamic Exclusion List. *See Lujan*, 504 U.S. at 560. Second, those products are updated on a regular basis, also independently of Defendants; how those products rate Media Plaintiffs presently or in the future is entirely out of Defendants' hands. Finally, whether any particular advertiser or social media company will use those technologies in the future to "harm" Media Plaintiffs is far-removed from Defendants' past or present conduct. Again, Plaintiffs' failure to cite even a single instance of current, concrete injury tied to Defendants' conduct highlights the implausibility of their theory of traceability.

In response, Plaintiffs argue that their "injuries are the predictable result" of Defendants' actions, and that "only one relevant third-party choice remains" in their purported causal chain of harm—"an organization adopting the tool or technology promoted by Defendants." Opp. at 18–19. That "one-step" characterization is wrong, as explained above. It also hinges on the premise that Defendants' "promotion" of tools or technologies for particular purposes—*i.e.*, GEC and its grantees

6

encouraging others to use products that it identified as being promising in combatting foreign disinformation overseas—opens the courthouse doors to Plaintiffs' generalized complaints about how NewsGuard and GDI have independently described them, and then further how their products are used by other third parties. Plaintiffs' cited cases do not support that expansive and novel theory of traceability. *See Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019) (traceability was satisfied where it turned only on a single inference supported by empirical evidence—that noncitizens would respond to the census at a lower rate due to the challenged action—that directly injured the plaintiffs); *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) (traceability similarly turned on a single inference—that noncitizens would apply for driver's licenses), *rev'd and remanded*, 597 U.S. 785 (2022); *Massachusetts v. EPA*, 549 U.S. 497, 523–24 (2007) (defendants "[did] not dispute the existence of a causal connection").

**Redressability.** Plaintiffs cannot show that the injunction they seek would remedy their purported injuries. In addition to the fundamental problem that their injuries, if any, are caused by private companies, Plaintiffs have not established any ongoing connection between Defendants and any of the third-party companies—those named in either the complaint or in the new allegations in their opposition—that this Court could alter through an injunction. In fact, the overbroad nature of the relief Plaintiffs seek highlights the problem with their entire theory of standing: they fail to identify a particular set of ongoing actions to enjoin, because they have not identified any ongoing concrete harm to them that is traceable to ongoing conduct. *See* Opp. at 19–20 (requesting that the Court enjoin unspecified "*ultra vires* testing, funding, developing and promotion of . . . tools and technologies that target the domestic press and speech"). And the ongoing "harms" of which Plaintiffs complain, summarized above, largely derive from third-party websites, underscoring the lack of redressability.

### 2. Plaintiffs' attempts to undermine the declarations in support of the motion to dismiss are unpersuasive.

Plaintiffs' attempts to discredit the sworn declarations attached to the government's motion to dismiss are unpersuasive. *See* Opp. at 20–24. First, Plaintiffs attack GEC Principal Deputy

Coordinator Daniel Kimmage's declaration because "not once does he deny that GEC's various initiatives likewise reached domestic press and speech." Opp. at 20–21. That contention betrays a profound misunderstanding of the relevant issues before this Court. It is not Defendants' burden to establish that none of the companies or researchers whose products GEC (or its grantees) identified as being useful for combatting foreign disinformation overseas could, under no circumstances, be used by other actors to identify disinformation from domestic news sources. Rather, Plaintiffs have the burden to show that they are suffering concrete injury attributable to Defendants' conduct. On that score, Kimmage's Declaration explains why Plaintiffs' various attempts to tie their purported injuries to GEC lack a factual basis. Indeed, GEC would be "severely constrain[ed]" in carrying out its statutorily mandated mission if it could not support a technology merely because that technology has more than one possible use. Kimmage Decl. ¶¶ 24–25. Most technologies that identify foreign disinformation overseas can be used in a wide range of settings, *id.*, but the evidence shows that GEC limits its assessment and support of technologies to foreign contexts, *id.* ¶¶ 8, 10–11.

Plaintiffs' attacks on the declarations submitted by NewsGuard's General Manager Matthew Skibinski and GDI's CEO Dr. Daniel Rogers fare no better. Those declarations establish that there is no causal link between Defendants' conduct and the development of NewsGuard's or GDI's products that Plaintiffs complain of, because Defendants did not fund or otherwise support those products. Skibinski Decl. ¶¶ 17, 23–24; Rogers Decl. ¶¶ 6–8. Plaintiffs are left to criticize facts such as that NewsGuard took care to minimize data collection on U.S. persons. Plaintiffs then speculate that this means NewsGuard "gathered at least some domestic information," Opp. at 21, a claim that lacks record support and does not establish particularized injury to Plaintiffs. Similarly, Plaintiffs take quotations from NewsGuard's press release about the 2020 Countering Disinformation Challenge out of context; NewsGuard's statements in its press release reference the projects it presented as part of that Tech Challenge, not the work it subsequently performed for GEC pursuant to its subgrant. ECF

11-24. Plaintiffs cannot dispute that "the scope of the project was limited to monitoring foreign state-sponsored sources of disinformation—with no focus on domestic news sources." Skibinski ¶ 25.[5]

Finally, contrary to Plaintiffs' assertions, Dr. Rogers attested that "GDI's Dynamic Exclusion List"—the purported sources of Plaintiffs' injuries—"was not funded by the State Department or any State Department-affiliated entity." Rogers ¶ 7. Instead of contesting that key point, which they cannot, Plaintiffs raise several red herrings, none of which establishes any causal connection between Defendants and ongoing harm to Plaintiffs through GDI, as is Plaintiffs' burden.[6]

### 3. The Court should disregard Plaintiffs' new allegations, which are in any event insufficient to establish standing.

Perhaps in recognition that the complaint is deficient as-is, Plaintiffs' opposition raises allegations about numerous new third-parties, third-party technologies, and State Department activities that appear nowhere in the complaint. Opp. at 13–14 (Media Literacy Now); *id.* at 15–18. But "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 727 (W.D. Tex. 2021). The Court should not consider any of these new allegations in deciding the motion to dismiss.[7] Plaintiffs might believe that these new allegations permissibly derive from the complaint's amorphous and overbroad rhetoric about the State Department's "censorship scheme" and the unidentified technologies that the complaint references.

---

[5] Plaintiffs fail to articulate harm from NewsGuard's Misinformation Fingerprints product, which "does not rate the credibility of news publishers and is not used to direct the placement of advertisements." Skibinski Decl. ¶ 16.

[6] Read in context, Dr. Rogers's statement that the government does not fund GDI's infrastructure costs is speaking about infrastructure for the Dynamic Exclusion List, referenced in the prior sentence. Rogers ¶ 7. GDI CEO Melford's statement during the U.S.-Paris Tech Challenge that the resulting subgrant would fund GDI's infrastructure in that different context—a project aimed at targeting foreign disinformation—does not contradict that. *See* Opp. at 22–23.

[7] To be sure, the Court can and should consider Plaintiffs' evidence in support of the complaint's existing allegations in deciding the factual motion to dismiss. But Plaintiffs cannot use evidence to amend their complaint. *Cf. In re Enron Corp.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[T]he Court does not consider new arguments raised by Plaintiffs in opposition to [Defendant's] motion to dismiss as part of their pleadings. . . .").

That would be mistaken. The core lesson from *Twombly* and its progeny is that broad "terms like 'conspiracy' or even 'agreement' . . . might well be sufficient in conjunction with a more specific allegation—for example identifying a written agreement . . ., but a court is not required to accept such terms as a sufficient basis for a complaint." 550 U.S. 544, 558–59 (2007). In other words, Plaintiffs cannot use the complaint's vague, conclusory language to bootstrap new, specific allegations.

In any event, as a matter of law, Plaintiffs' new allegations do not come close to establishing standing. Plaintiffs do not even attempt to connect several of the new theories—those involving "Public Editor," "Critical Mass LLC," "Election Integrity Partnership," and flagging Chinese Twitter accounts—to Media Plaintiffs, instead resting on the specter of generalized, purported harm to "American speech" as a whole. Opp. at 16–17. That ignores virtually every legal principle underlying the case-or-controversy requirement, and the Court should reject them outright.[8]

Moreover, the allegations regarding Logically.AI and Media Literacy Now fail for the same reasons that the complaint's allegations about NewsGuard and GDI fail. As for the former, Plaintiffs' theory of injury apparently stems from one paragraph of a three-year-old newsletter written by a GEC grantee about a private company that independently fact-checks news articles, including a handful of Media Plaintiffs' articles in 2021. Opp. at 15–16. That chain of events does not meet Article III's requirements. There is no plausible basis to infer that the paragraph in the years-old newsletter, on a website that is no longer accessible, is causing ongoing or imminent injury to Media Plaintiffs. Moreover, there are numerous traceability problems: (a) GEC's grantee, not GEC, wrote the post; (b) the theory depends on the independent decisions of third parties to adopt Logically.AI's products; and (c) it further depends on those third parties using one of those products in a way that will harm Media Plaintiffs in the future. And there is no injunction this Court could order, directed at

---

[8] Even if true, these allegations cannot support injury to Texas either, because they do not show that Defendants are currently engaged in any activity that prevents social media companies from complying with H.B. 20 or prevents Texas from enforcing H.B. 20 against a company that violates that law.

Defendants, that would remedy any of the above, because Plaintiffs have not asserted any ongoing connection between Defendants and Logically.AI, and the Disinfo Cloud Digest no longer exists.

The same analysis applies to the 2021 Media Literacy Now seminar. *See* Opp. at 13–15. Plaintiffs assert that (a) the State Department's Embassy in Berlin, Germany (not GEC) issued a $30,000 grant three years ago to a private company for the purpose of promoting disinformation training for teachers abroad; (b) during one of the seminar sessions organized by the private company grantee, one speaker presented a chart about media bias; (c) the chart is part of a broader tool published by a different third party (Ad Fontes) that rates media companies including Media Plaintiffs; and (d) one of the sessions presented a "Data Detox Kit," and on a separate webpage, the Detox Kit lists NewsGuard in a list of tools that rate the credibility of news sources. It is difficult to understand how Plaintiffs are imminently harmed by this years' old sequence of events, let alone in a way that is traceable to the original $30,000 grant, or is redressable. As for injury, this one-time seminar in 2021 was held for teachers, not for the advertisers and social media companies that are the purported source of Media Plaintiffs' injury; Plaintiffs fail to establish a relevant connection between the two. The "Detox Kit" webpage does not "instruct" anyone to do anything; it contains a list of resources and tells the reader to "use that information to decide for yourself" whether a news source is credible. ECF 41-24. All of the above is also not traceable Defendants—it involves numerous independent actions by third parties—nor could any theoretical ongoing harm be redressed by an injunction aimed at Defendants because the grant to Media Literacy Now has ended.

III.    **Plaintiffs have not identified any final agency action.**

Plaintiffs do not satisfy the APA's jurisdictional requirement to identify the final agency action that they challenge. Mot. at 26–27. Plaintiffs' opposition brief reiterates that, in their view, the "final agency action" they challenge is "Defendants' secretive scheme to suppress . . . a segment of the press." Opp. at 7. In other words, Plaintiffs offer no rebuttal to the fact that the APA's "prohibition

on programmatic challenges" forecloses their claim. *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (discussing *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), which held that a plaintiff could not challenge the Secretary of the Interior's entire "land withdrawal review program" because there was no identified final agency action). Plaintiffs lastly argue that the complaint identifies some discrete agency actions, but even assuming those were final for APA purposes, Plaintiffs fail to address the Fifth Circuit's holding that they cannot "challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program." *Peterson*, 228 F.3d at 567; *see* Mot. at 27.[9]

## IV.      Jurisdictional discovery is not warranted.

Finally, Plaintiffs request discovery to remedy the jurisdictional deficiencies in the complaint, just as they have sought discovery to remedy the deficiencies in their preliminary injunction motion. Opp. at 29–30. As the government has explained, this request should be denied. *See* Defs.' Opp. to Mot. for Exp. Disc. (ECF 20) at 6. "[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). Plaintiffs' cursory request fails to explain what facts Plaintiffs seek, or how those facts are likely to overcome the numerous facial and factual flaws underlying their standing theories. The Court should reject that "jurisdictional fishing expedition." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 325 (5th Cir. 2021).[10]

## CONCLUSION

For these reasons, the Court should grant Defendants' motion to dismiss.

---

[9] Defendants have only moved to dismiss the APA claim for failure to identify final agency action.
[10] In seeking to maintain their duplicative claims against the official-capacity Defendants, Plaintiffs assert without support that GEC "could be shifted to another federal agency." Opp. at 30. Not so; Congress directed the Secretary of State to establish the GEC within the State Department. 22 U.S.C. § 2656 note (Global Engagement Center) § (a)(1).

Dated: April 17, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel
Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

*/s/ Arjun Mody*
DOROTHY M. CANEVARI (NY # 5989694)
CRISTEN C. HANDLEY (MO # 69114)
CODY T. KNAPP (NY # 5715438)
ARJUN MODY (DC #90013383)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 451-7723
Email: arjun.a.mody@usdoj.gov

*Counsel for Defendants*

13

## CERTIFICATE OF SERVICE

On April 17, 2024, I electronically submitted this document to the clerk of the court of the U.S. District Court for the Eastern District of Texas using the court's electronic case filing system. I certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Arjun Mody*
Arjun Mody