**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **THE DAILY WIRE, LLC;** | |
| **FDRLST MEDIA, LLC; and** | |
| **THE STATE OF TEXAS, by and through its Attorney General, Ken Paxton,** | **Civil Action No.: 6:23-cv-00609** |
| *Plaintiffs,* | **Plaintiffs' Notice of Filing** |
| v. | |
| **DEPARTMENT OF STATE;** | |
| **GLOBAL ENGAGEMENT CENTER;** | |
| **ANTONY BLINKEN, in his official capacity as Secretary of State;** | |
| **LEAH BRAY, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center;** | |
| **JAMES P. RUBIN, in his official capacity as Coordinator for the Global Engagement Center of the State Department;** | |
| **DANIEL KIMMAGE, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department;** | |
| **ALEXIS FRISBIE, in her official capacity as Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department;** | |
| **PATRICIA WATTS, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department,** | |
| *Defendants.* | |

Pursuant to the Court's request, Plaintiffs now file herewith the expedited discovery requests that Plaintiffs seek leave of Court to file on Defendants, namely Requests for Production of Documents & Other Tangible Items, Interrogatories, and Addendum A, which provides Definitions and Instructions for the discovery requests. Plaintiffs also file the proposed order which provides their requested expedited discovery schedule.

Dated: May 2, 2024

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General of Texas

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan D. Walters
Chief, Special Litigation Division

/s/ Susanna Dokupil
Susanna Dokupil
Lead Attorney Special Counsel
Texas Bar No. 24032801

Munera al-Fuhaid
Special Counsel
Texas Bar No. 24094501

Jacob E. Przada
Special Counsel
Texas Bar No. 24125371

Office of the Attorney General of Texas
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
Phone: (512) 936-3754

*Attorneys for Plaintiff the State of Texas*

Respectfully submitted,

/s/ Margaret A. Little
Margaret A. Little
Lead Attorney
Senior Litigation Counsel
Connecticut Bar No. 303494
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238

/s/ Margot J. Cleveland
Margot J. Cleveland
Of Counsel
Michigan Bar No. 83564
New Civil Liberties Alliance
Margot.Cleveland@ncla.legal

/s/ Casey Norman
Casey Norman
Litigation Counsel
New York Bar No. 5772199
New Civil Liberties Alliance
Casey.Norman@ncla.legal

*Counsel for Plaintiffs The Daily Wire Entertainment LLC and FDRLST Media LLC*

1

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 2, 2024, I caused a true and correct copy of the foregoing notice to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Margot J. Cleveland*

Margot J. Cleveland

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **THE DAILY WIRE, LLC;** | |
| **FDRLST MEDIA, LLC; and** | |
| **THE STATE OF TEXAS, by and through its Attorney General, Ken Paxton,** | **Civil Action No.: 6:23-cv-00609** |
| *Plaintiffs,* | |
| v. | **Plaintiffs' First Set of Requests for Production of Documents & Other Tangible Items to Defendants** |
| **DEPARTMENT OF STATE;** | |
| **GLOBAL ENGAGEMENT CENTER;** | |
| **ANTONY BLINKEN, in his official capacity as Secretary of State;** | |
| **LEAH BRAY, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center;** | |
| **JAMES P. RUBIN, in his official capacity as Coordinator for the Global Engagement Center of the State Department;** | |
| **DANIEL KIMMAGE, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department;** | |
| **ALEXIS FRISBIE, in her official capacity as Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department;** | |

**PATRICIA WATTS, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department,**

*Defendants*.

Plaintiffs The Daily Wire, LLC, FDRLST Media, LLC, and the State of Texas, by counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby request that Defendants Department of State, Global Engagement Center, Antony Blinken, Leah Bray, James P. Rubin, Daniel Kimmage, Alexis Frisbie, and Patricia Watts produce for inspection to the undersigned

2

counsel all documents and electronically stored information requested below within the time required by order of the Court. ECF _____. Definitions and Instructions are contained in an Addendum to the Discovery Requests. *See Addendum A*.

## <u>REQUESTS FOR PRODUCTION</u>

### <u>Request for Production No. 1:</u>

*Park Advisors & Becera:*

You state that GEC issued a grant to Park Advisors to administer GEC's "Testbed initiative and International Tech Challenges," and that Park Advisors also "launched the now-retired Disinfo Cloud" platform, "established a weekly newsletter, Disinfo Cloud Digest," and "created a Twitter account for Disinfo Cloud." ECF33 at 10-11. You further state that "GEC's use of Disinfo Cloud ended in December 2021, and GEC no longer has access to it" and, likewise, that "GEC no longer has access to" its Twitter account. *Id.* at 11. Additionally, You state that "GEC's contract with Park Advisors ended, the Testbeds and International Tech Challenges initiatives continued, first through a subcontract with the consultancy company Becera, and now directly under GEC." *Id*. at 11 n.3.

1.      Provide all Communications, Documents, and Information related to Becera and Park Advisors' duties, responsibilities, rights, and any agreements that Defendants entered into with Becera and Park Advisors, from 2019 to present, including, but not limited to, all draft contracts, contracts in final form, amendments, Documents reflecting users (whether added or deleted) who have or had access to or control over platforms, materials, and social media accounts, any statements of work, including any deliverables, invoices, or payments that can currently be accessed by or which Defendants retain control over which were originally created with State Department funds.

### <u>Response:</u>

### <u>Request for Production No. 2:</u>

The Technology Engagement Team states that it "identifies technologies with potential application in countering propaganda and disinformation (CPD)."[1] The Administrator of Disinfo Cloud stated that Disinfo Cloud assessed various CPD Tools and Technologies, initially by completing open-source research to learn about the tool, its manufacturer, and the technology involved.[2] The team would next summarize the research in a one-to-three-page summary.[3] Disinfo Cloud would subsequently conduct more probing research of these censorship tools and technologies, contacting the tools' creators, requesting a remote demonstration, and obtaining more intricate technical details.[4] Disinfo Cloud would then compile a ten-to-twelve-page report on the technology. *Id.* Disinfo Cloud "identified and assessed over 365 tools and technologies."[5]

2.    Provide all Communications, Documents, and Information from 2019 to the present, that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds that refer to, or relate to CPD Tools and Technologies assessed by, or on behalf of, the State Department, which, at the time assessed by, or on behalf of, the State Department, were coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' speech or the American press, wherever developed, published, or disseminated.

**Response:**


**Request for Production No. 3:**

***Testbed Initiative:***

According to the State Department, one of the Technology Engagement Division's programs is its "Tech Testbed," which the State Department has described as follows: "The GEC solicits real challenges of the U.S. government (USG) to counter foreign propaganda and disinformation, and tests specific tools or technologies against a submitted proposal. Tests can combine existing capabilities or implement novel tech solutions for a rapid assessment of technologies that are employed against real operational challenges. The tests usually run six to eight weeks."[6] You maintain that GEC previously contracted with Park Advisors, and then

---

[1] https://www.state.gov/technology-engagement-division/technology-solutions/.
[2] Mad Scientist: Weaponized Information Virtual Conference, July 21, 2020, at 15:45, available at 2.09 MadSci Weaponized Information: Technology Engagement Team & Disinfo Cloud - Ms. Frisbie & Nemr – YouTube, https://www.youtube.com/watch?v=YoeHq5gX0dA
[3] *Id*.
[4] *Id*.
[5] https://www.state.gov/technology-engagement-division/technology-solutions/
[6] https://www.state.gov/programs-technology-engagement-division/.

Becera, "to run the testbed initiative, but that GEC now handles that initiative directly." *Id*. at 11 n.3. Further, while You characterize the testbed initiative as focused on tools and technology used to combat foreign disinformation, evidence shows the testbed has tested tools and technologies that reach Americans' speech and the American press. ECF11-24 at 3; ECF41-53 at 6; ECF41-35; ECF11-24. Further, evidence suggests that NewsGuard licensed its "nutrition ratings" and other technology that reaches the American press and Americans to the government. ECF11-24; ECF11-42, ECF 11-43.

3.      Provide all Communications, Documents, and Information from 2019 to the present that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds, that refer to, or relate, to the testbed initiative and/or "Tech Testbed,"[7] including any proposals, tests, criteria, specifications, statement of work, licenses, agreements, evaluations, results, findings, and assessments, or the like, where at the time tested by, or on behalf of, the State Department, the tools or technologies were coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' speech or the American press, wherever developed, published, or disseminated.

**Response:**


**Request for Production No. 4:**

*Counter-Disinfo Resources:*

GEC currently highlights on its .gov webpage several organizations and resources that the State Department represents as "counter-disinfo resources" that "offer commercial, non-profit, think tank, and academic technology solutions, dashboards, and research," including "the Alliance for Security (*sic*) Democracy, the Atlantic Council's Digital Forensic Research Lab, the CredCatalog, Fighting Disinformation Online, MediaWell, and Misinformation Review."[8]

---

[7] https://www.state.gov/programs-technology-engagement-division/.
[8] https://www.state.gov/resources-technology-engagement-division/.

4.     Provide all Communications, Documents, and Information from 2019 to the present referring or relating to the decision(s) to feature those above-referenced organizations and resources on the State Department's webpage.

**Response:**

**Request for Production No. 5:**

***Tech Challenges Initiative*:**

According to the Technology Engagement Team (TET), the GEC conducts "intensive workshops," consisting of "one or two-day Tech Challenges."[9] According to TET, GEC's "Tech Challenges are focused primarily on supporting foreign technologists. GEC and its foreign partners invite foreign-based technologists to demonstrate their capabilities in real time during the Tech Challenge. At the end of the Tech Challenges, selected promising technologies are awarded grants . . . ."[10] The GEC also co-sponsored the NSIN Challenge—Countering COVID19 Disinformation tech challenge.[11] Evidence establishes the technology entered in the Tech and NSIN Challenges reached Americans' speech. ECF41-15.

5.     Provide all Documents, Communications, and Information from 2019 to the present that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds that refer or relate to any tools or technologies evaluated as part of the Tech, NSIN, or other Challenges, where at the time evaluated, by, or on behalf of, the State Department the tools or technologies were coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' speech or the American press, wherever developed, published, or disseminated.

---

[9] https://www.state.gov/programs-technology-engagement-division/.
[10]  https://www.state.gov/programs-technology-engagement-division/.
[11] https://www.nsin.mil/events/disinfo-challenge/.

**Response:**

**Request for Production No. 6:**

*Private Sector Engagement*

Defendants maintain that "[t]he GEC's private sector engagement portfolio entails engagement to facilitate knowledge-sharing between the U.S. government and the tech sector, academia, and the research community on the topic of foreign information manipulation overseas." ECF28-1 at 7. However, evidence indicates that Defendants' private sector engagement was not limited to "the topic of foreign information manipulation overseas." ECF41-55, CISA, Cyber Summit 2020: Day Four (Defending our Democracy), *Combating Misinformation and Disinformation*, YouTube, at 3:24:17, *available at* https://www.youtube.com/watch?v=WDtstiYHRNc; ECF41-48, Declaration of Leah Bray at 8, ¶18, Exhibit, *Missouri v. Biden*, No. 22-cv-01213, ECF266-6, Apr. 27, 2023; ECF41-49 at 3 (exhibit in *Missouri v. Biden*, No. 22-cv-01213 showing GEC targeting domestic post); ECF41-25 at 8-10 Mad Scientist: Weaponized Information Virtual Conference, July 21, 2020, at 33:58, 34:10, *2.09 MadSci Weaponized Information: Technology Engagement Team & Disinfo Cloud – Ms. Frisbie & Nemr – YouTube, available* at https://www.youtube.com/watch?v=YoeHq5gX0dA (explaining GEC "is regularly looking to engage with, you know, private industry and looking to have conversations to ensure that there is discussion occurring so I think that, you know, those are in terms of interaction that's talking about at a domestic level").

6.    Provide all Communications, Documents, and Information that GEC or TET, or any Person acting on behalf of GEC or TET, sent to, received from, copied to, or exchanged with individuals in Academia, the Private Sector, and Tech Vendors, or Technology Platforms, from December 2019 to the Present, that can currently be accessed by, or which Defendants retain control over, and were originally created with State Department funds, that refer or relate to MDM, CPD Tools or Technology, Content Modulation, or Media Literacy, when at the time of the creation of the Communication, Document, and Information, the coding and/or testing specifications for the tools or technologies discussed did reach or could reach Americans' speech or the American press, wherever developed, published, or disseminated.

**Response:**

7

**Request for Production Nos. 7-8:**

*Awards*

The State Department awarded a $30,000 grant to Media Literacy Now, Inc., a Massachusetts-based corporation "devoted to advancing media literacy in the United States."[12] The grant award represented that the funds were to "advance the quality of media literacy education in Germany." ECF 41-17, Media Literacy Now Grant Summary, USASpending at 3 (describing purpose of grant). However, still-available recordings of the State-Department-funded seminars and the Final Report establish the grant was used to train American teachers on tools and technologies that target Americans' speech, including Ad Fontes's "Media Bias Chart" and NewsGuard. ECF41-16, Final Report, Medialogue on Propaganda, *in passim* (summarizing participation of American teachers). Videos and Slides, Medialogue on Propaganda, *available at* https://www.medialogues.de/videos (videos of State-Department-funded training sessions for American teachers).

7.   For any award(s) You made for all or part of fiscal year 2023 to the present, related to MDM, Content Modulation, or Media Literacy, provide all Communications, Documents, and Information, including but not limited to applications, awards, assessments, statements of work, evaluations, deliverables, or reports.

**Response:**

8.     For any award(s) You made from 2019 to all or part of 2022, related to MDM, Content Modulation, or Media Literacy, where materials developed as part of that award remain publicly available, or that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds, provide all Communications, Documents, and Information, including but not limited to applications, awards, assessments, statements of work, evaluations, deliverables, and reports.

---

[12] ECF41-16, Final Report, Medialogue on Propaganda at 29 (detailing use of grant to Media Literacy Now which describes that entity as a non-profit seeking to advance "media literacy in the United States").

8

**Response:**


**Request for Production No. 9:**

***Tech-Driven Operations*:**

      The State Department asserts that one of its programs is "Tech-Driven Operations," but the State Department's website's description of that program merely states: "Information available upon request."[13]

9.   Provide all Communications, Documents, or Information referring to or related to the Tech-Driven Operations, including, but not limited to, the "information" available and to be provided upon request.

**Response:**


**Request for Production No. 10:**

10.   Provide all Communications, Documents, and Information from 2019 to the present that were sent to, submitted to, copied to, received from, exchanged with, or gathered by or for, GEC or TET, or Persons acting on behalf of GEC or TEC, which contain any of the Search Terms.

**Response:**


**Request for Production No. 11:**

A GEC response to a Freedom of Information Act request referenced an internal document titled, "2023.02.14 GEC-GDI-BLACKLIST.docx."[14]

---

[13] https://www.state.gov/programs-technology-engagement-division/

[14] Gabe Kaminsky, *Biden Administration in Hot Seat for Sending Congress 'Incomplete' Records for Censorship Investigation*, available at https://www.washingtonexaminer.com/news/2789357/biden-administration-gop-incomplete-records-censorship-investigation/.

11.     Provide a copy of the GEC internal file named "2023.02.14 GEC-GDI-BLACKLIST.docx," any drafts of this Document, and any Documents or Communications related to the creation or editing of this Document, including the metadata.


**Response:**


**Request for Production No. 12:**

GEC stated that it developed a research agenda in Spring 2022,[15] based on research priorities that included assessing: "How can governments and civil society build resilience to disinformation by (re)building trust in democratic institutions (government, media, public health, etc.)? How can civil society build resilience to disinformation through a whole of society approach?" The GEC further stated that "U.S. representatives" to GEC's working group, "also identified the following research priorities: How can governments and civil society work most effectively with technology companies to counter disinformation? How can governments and civil society raise the cost on disinformation disseminators? How can governments and civil society work most effectively with media companies to counter disinformation? How can governments use improved governance-related solutions to counter disinformation?"


12.     Provide all Communications, Documents, and Information related to the above research agenda, including its development, the involvement the U.S. representatives to the working group, and discussion of how this research agenda applies or relates to the United States or to Americans' speech or the American press, wherever developed, published, or disseminated.


**Response:**

---

[15]     INTERNATIONAL COUNTER-DISINFORMATION RESEARCH AGENDA, *available at* https://www.state.gov/wp-content/uploads/2023/07/International-Counter-Disinformation-Research-Agenda-508.pdf.

**Request for Production No. 13:**

13.   Provide all Communications, Documents, and Information from 2019 to the present, that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds and that refer or relate to Americans' speech and MDM, CPD Tools or Technology, Content Modulation, or Media Literacy that GEC or TET, or persons acting on GEC or TET's behalf, sent to, submitted to, copied to, received from, exchanged with, or gathered by or for foreign partners.

**Response:**

**Request for Production No. 14:**

14.   Provide all Communications, Documents, and Information that GEC or TET, or Persons acting on GEC or TET's behalf, provided its interagency partners from 2019 to the present, that can be currently accessed by, or which Defendants retain control over, which were originally created with State Department funds and that refer or relate to Americans' speech, or CPD Tools or Technology, Content Modulation, or Media Literacy when, at the time of the communication, the coding and/or testing specifications of the CPD Tools or Technology, Content Modulation, or Media Literacy initiative reached or could reach Americans' speech or the American press, wherever developed, published, or disseminated.

Dated: May 2, 2024                              Respectfully submitted,

KEN PAXTON
Attorney General of Texas                       */s/ Margaret A. Little*
                                                Margaret A. Little
                                                Lead Attorney
BRENT WEBSTER

11

First Assistant Attorney General of Texas

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

*/s/ Susanna Dokupil*
SUSANNA DOKUPIL
Lead Attorney Special Counsel
Texas Bar No. 24032801

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

JACOB E. PRZADA
Special Counsel
Texas Bar No. 24125371

Office of the Attorney General of Texas
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
Phone: (512) 936-3754

*Attorneys for Plaintiff the State of Texas*

Senior Litigation Counsel
Connecticut Bar No. 303494
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238

*/s/ Margot J. Cleveland*
Margot J. Cleveland
Of Counsel
Michigan Bar No. 83564
NEW CIVIL LIBERTIES ALLIANCE
Margot.Cleveland@ncla.legal

*/s/ Casey Norman*
Casey Norman
Litigation Counsel
New York Bar No. 5772199
NEW CIVIL LIBERTIES ALLIANCE
Casey.Norman@ncla.legal

*Counsel for Plaintiffs The Daily Wire
Entertainment LLC and FDRLST Media LLC*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2024, I electronically filed the foregoing Plaintiffs' First Set of Requests for Production of Documents & Tangible Things to Defendants with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.


/s/ Margot J. Cleveland
Margot J. Cleveland

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **THE DAILY WIRE, LLC;** | |
| **FDRLST MEDIA, LLC; and** | |
| **THE STATE OF TEXAS, by and through its Attorney General, Ken Paxton,** | |
| *Plaintiffs*, | **Civil Action No.: 6:23-cv-00609** |
| v. | |
| **DEPARTMENT OF STATE;** | |
| **GLOBAL ENGAGEMENT CENTER;** | **PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT** |
| **ANTONY BLINKEN, in his official capacity as Secretary of State;** | |
| **LEAH BRAY, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center;** | |
| **JAMES P. RUBIN, in his official capacity as Coordinator for the Global Engagement Center of the State Department;** | |
| **DANIEL KIMMAGE, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department;** | |
| **ALEXIS FRISBIE, in her official capacity as Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department;** | |
| **PATRICIA WATTS, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department,** | |
| *Defendants*. | |

Plaintiffs Daily Wire, LLC, FDRLST Media, LLC, and State of Texas, through counsel and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, submit the following interrogatories to be answered by Defendants, as ordered by the Court. ECF _____.   Definitions and Instructions are contained in an Addendum to the Discovery and Interrogatory Requests. *See Addendum A.*

**<u>FIRST SET OF INTERROGATORIES</u>**

**<u>Interrogatory 1</u>**

Identify any CPD Tool or Technology that GEC or TET, or Persons acting on behalf of GEC or TET, discussed with federal agencies or State Governments since 2019, where at the time discussed, the CPD Tool or Technology was coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' Speech or the American press, wherever developed, published, or disseminated. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**<u>Response:</u>**

**<u>Interrogatory 2</u>**

Identify any CPD Tool or Technology that GEC or TET, or Persons acting on behalf of GEC or TET, have discussed with Academia, the Private Sector, Tech Vendors, or Technology Platforms, from 2019 to the present, where, at the time discussed, the CPD Tool or Technology was coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or in part, Americans' Speech or the American press, wherever developed, published, or disseminated. If you maintain that the conduct or initiative is no longer taking place, state when

1

the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

**Interrogatory 3**

Identify any CPD Tool or Technology that GEC or TET, or Persons acting on behalf of GEC or TET, have discussed with foreign partners from 2019 to the present, where at the time discussed, the CPD Tool or Technology was coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' Speech or the American press, wherever developed, published, or disseminated. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

**Interrogatory 4**

Identify any tools, technologies, data, platforms, or other material that Park Advisors or Becera prepared for Defendants, which can currently be accessed by Defendants or which they retain control over. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

**Interrogatory 5**

Identify any CPD Tool or Technology maintained or referenced on the Tech Testbed, which are currently coded or designed and/or capable of monitoring, impacting, or otherwise affecting, in whole or part, Americans' Speech or the American press, wherever developed, published, or disseminated. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

**Interrogatory 6**

Identify any licenses granted, or data provided, to Defendants, that can currently be accessed by, or which Defendants retain control over, originally obtained with State Department funds, which provide Defendants, federal agencies, State Governments, or foreign partners the ability to monitor, review, track, flag, or otherwise assess or affect, in whole or part, Americans' Speech or the American press, wherever developed, published, or disseminated. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

**Interrogatory 7**

Identify any Awards made by Defendants from 2019 to present that were used in connection with MDM, CPD Tools or Technology, Content Modulation, or Media Literacy that involved, discussed, or affected, in whole or part, Americans' Speech or the American press, wherever developed, published, or disseminated, where the subject matter of the Awards can currently be accessed by Defendants or which they retain control over. If you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Context for Interrogatory 8**

The State Department stated on its web page: "All good things must come to an end: with the start of the new year, the GEC's Disinfo Cloud platform and the Disinfo Cloud Digest have been retired as GEC-sponsored efforts. However, the GEC's work to elevate technology solutions to disinformation challenges continues with new projects designed to adapt to the current environment. Stay tuned for more information on the next iteration of this program!"[1]

**Interrogatory 8**

Identify what project or projects have replaced, or will replace, the Disinfo Cloud platform, Disinfo Cloud Digest, and the Tech Testbed, along with any individuals or entities involved in the "next iteration" of the Disinfo Cloud platform, Disinfo Cloud Digest, and the Tech Testbed, and/or "the new projects designed to adapt to the current environment," or with whom you have communicated about the next iteration of Disinfo Cloud or the aforementioned new projects. If

---

[1] https://www.state.gov/defeat-disinfo/

you maintain that the conduct or initiative is no longer taking place, state when the program ended and the factual basis for your claim that it is no longer affecting American speech or the American press.

**Response:**

Dated: May 1, 2024

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General of Texas

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

/s/ Susanna Dokupil
SUSANNA DOKUPIL
Lead Attorney Special Counsel
Texas Bar No. 24032801

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

JACOB E. PRZADA
Special Counsel
Texas Bar No. 24125371

Respectfully submitted,

/s/ Margaret A. Little
Margaret A. Little
Lead Attorney
Senior Litigation Counsel
Connecticut Bar No. 303494
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238

/s/ Margot J. Cleveland
Margot J. Cleveland
Of Counsel
Michigan Bar No. 83564
NEW CIVIL LIBERTIES ALLIANCE
Margot.Cleveland@ncla.legal

/s/ Casey Norman
Casey Norman
Litigation Counsel
New York Bar No. 5772199
NEW CIVIL LIBERTIES ALLIANCE

Office of the Attorney General of Texas
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
Phone: (512) 936-3754

*Attorneys for Plaintiff the State of Texas*

Casey.Norman@ncla.legal

*Counsel for Plaintiffs The Daily Wire
Entertainment LLC and FDRLST Media LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2024, I electronically filed the foregoing Plaintiffs' First Set of Interrogatories with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Margot J. Cleveland
Margot J. Cleveland

# ADDENDUM A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **THE DAILY WIRE, LLC;** | |
| **FDRLST MEDIA, LLC; and** | |
| **THE STATE OF TEXAS, by and through its Attorney General, Ken Paxton,** | |
| *Plaintiffs*, | **Civil Action No.: 6:23-cv-00609** |
| v. | |
| **DEPARTMENT OF STATE;** | |
| **GLOBAL ENGAGEMENT CENTER;** | **Definitions and Instructions for Plaintiffs' First Set of Requests for Production of Documents & Other Tangible Items to Defendants and Plaintiffs' First Set of Interrogatories to Defendants** |
| **ANTONY BLINKEN, in his official capacity as Secretary of State;** | |
| **LEAH BRAY, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center;** | |
| **JAMES P. RUBIN, in his official capacity as Coordinator for the Global Engagement Center of the State Department;** | |
| **DANIEL KIMMAGE, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department;** | |
| **ALEXIS FRISBIE, in her official capacity as Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department;** | |
| **PATRICIA WATTS, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department,** | |
| *Defendants*. | |

## DEFINITIONS

A. **"Academia, the Private Sector, or Tech Vendors"** has the meaning given that phrase by Defendants in identifying users of Disinfo Cloud and Testbed.[1]

B. **"And," "or," and "and/or"** and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively so as to require the production of all Communications, Documents, and/or Information responsive to all or any part of each particular request.

C. **"Any," "each," "every,"** and **"all"** shall be read to be inclusive and to require the production of each and every Document and/or Communication (hereinafter defined) responsive to the particular request.

D. **"Award"** means any monetary or in-kind transfer directly or indirectly, in whole or in part, from the Defendants, or another Person (as defined below at "T") acting on their behalf, whether referred to as an award, grant, contract, prize, or otherwise.

E. **"Content Modulation"** means any action taken by any Technology Platform to limit, restrict, constrict, or eliminate the distribution of speech or content, regardless of form, deemed to be MDM (as defined below at "S"), or to sanction a speaker or author for speech or content deemed to be MDM. "Content Modulation" includes any form of restriction on access to, censorship, suppression, or modulation of speakers, authors, viewpoints, speech, and/or content by any Technology Platform (as defined below at "Z"), including any reference to or discussion of any speech or content considered to be MDM, or any speaker considered by the Technology Platform, Defendants, or a State Government to be a purveyor of MDM. "Content Modulation" includes any form of blocking, deterring, deleting, suspending, suppressing, reducing the exposure of, and/or restricting or limiting access to, any speech, content, author, or speaker on Technology Platforms,

---

[1] https://2017-2021.state.gov/disinfo-cloud-launch/.

including, but not limited to: termination of account(s) or channel(s), permanent or temporary suspension of account(s) or channel(s), removal of content or posting(s), issuing strike(s) or warning(s) against account(s) or speaker(s), suppression of content, de-boosting, de-emphasizing, de-monetizing, deindexing, downlisting, downranking, shadow-banning, limiting number(s) of followers or subscribers, affixing advisory label(s) or warning label(s) to content, preventing the amplification of content, requiring additional click(s) to access content, and/or reducing, constricting, or restricting the distribution of content in any way. "Content Modulation" also includes, but is not limited to, the use or adjustment of algorithm(s) to achieve any of the foregoing.

F.      **"Communications"** means any oral, written, or electronic dialogue between two or more Persons, including but not limited to letters, notes, emails, voicemail messages, faxes, instant messages, direct messages, private messages, encrypted messages, and SMS text messages, as well as all letters, memoranda, telegrams, cables, notes, and other writings or Documents reflecting those Communications. Communications to any Person include, without limitation, emails and memoranda in which such Person's name or email address is in the "to," "cc," or "bcc" field.

G.      **"Content"** means any material, including but not limited to posts, messages, videos, photographs, and audio files, publicly or privately posted or sent to another user or users by any user on Technology Platforms.

H.      **"Countering Propaganda and Disinformation Tools or Technologies," "CPD Tools or Technologies," or a "CPD Tool or Technology"** has the meaning given that phrase by Defendants. CPD Tools or Technologies include all tools or technologies with potential application in countering MDM,[2] as well as any method, algorithm, approach, platform, application, software, program, tool, or technology that can be used to counter, rebut, silence, suppress, or otherwise

---

[2] https://www.state.gov/upcoming-events-technology-engagement-division/.

limit the reach or monetization of speech or publications in any form, including but not limited to tools previously branded by Defendants as CPD Tools or Technologies: Social Listening Tools, AdTech Tools, Natural Language Processing, Manipulated Information Assessment Tools, Dark Web Monitoring Tools, Blockchain-Based Media Authentication Tools, Fact-Checking Tools, Gamified Education Tools, Internet Freedom Tools, Crowd-Sourced Content Assessments and Web Annotation Tools, Blacklists, and Whitelists.[3]

I.      **"Defendants," "You,"** or **"Your"** means the Department of State; Global Engagement Center; Antony Blinken, in his official capacity as Secretary of State; Leah Bray, in her official capacity as Deputy Coordinator of the State Department's Global Engagement Center; James P. Rubin, in his official capacity as Coordinator for the Global Engagement Center of the State Department; Daniel Kimmage, in his official capacity as the Principal Deputy Coordinator for the Global Engagement Center at the State Department; Alexis Frisbie, in her official capacity as the Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department; and Patricia Watts, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department.

J.      **"Department of State" or "State Department"** means the United States Department of State and any Person or Persons working on its behalf, including, but not limited to, the Secretary, employees, consultants, contractors, detailees, fellows, or interns, whether they are paid or unpaid by the Department individually, collectively, or in any combination.

K.      **"Document"** means without limitation, any written, recorded, graphic, or other material, however produced or reproduced, whether or not claimed to be privileged against discovery on any grounds, including, but not limited to, material in the form of reports, statements, records

---

[3] https://www.state.gov/technology-engagement-division/technology-solutions/.

3

(including any workflow software record), agreements, lists, memoranda, correspondence, sound and/or video recordings (or transcripts of recordings), appointment calendars, appointment invitations and responses, worksheets, emails, computer files, including the metadata of the file, or any other documents or Communications of any kind whatsoever, irrespective of form, including any and all metadata. All attachments or enclosures to a Document are deemed to be part of such Document.

L.      **"Global Engagement Center" or "GEC"** means the interagency center housed within and funded by Department of State.

M.      **"Identify"** requires identification of (a) natural Persons by name, title, present business or governmental affiliation, present business or governmental address, telephone number, and email address or, if a present business or governmental address is not known, the last known business or governmental or home addresses; and (b) businesses, governmental, or other organizations by name, address, and the identities of your contact Persons at the business or governmental or other organization.

N.      **"Including"** means including, but not limited to.

O.      **"Information"** means data, documents, communications, writings, drawings, graphs, charts, photographs, sound recordings, images, records generated by individuals or machines, or the compilation of any of the foregoing stored in any medium, including electronically stored information.

P.      **"Interagency"** has the meaning given that phrase by Defendants in identifying users of Disinfo Cloud and Testbed, including, but not limited to, "[t]he Census Bureau, U.S. Congress, Department of Defense, Department of Energy, Department of Homeland Security, Department of State, Federal Bureau of Investigation, Office of Global Affairs, Office of the Director of National

4

Intelligence, Department of the Treasury, U.S. Agency for Global Media, and the Department of Agriculture."[4]

Q.      **"Media Literacy"** means the ability to access, analyze, and evaluate the media.

R.      **"Meeting"** includes gatherings conducted in Person, by telephone, or virtually.

S.      **"MDM,"** which stands for Misinformation, Disinformation, and Malinformation, means, no matter what it is called, any form of speech, expression, writing, or other communication or content considered to be potentially or actually incorrect, mistaken, false, misleading, lacking proper context, disfavored, having the tendency to deceive or mislead, or otherwise objectionable on similar grounds, including, but not limited to, any content or speech considered by any federal official or employee to be: "misinformation" or the inadvertent sharing of false information that is not intended to cause harm; "disinformation," or the purposeful dissemination of information that may be true, but is intended to mislead, harm, or manipulate; "malinformation," or information based on fact which seeks to mislead, harm, or manipulate, or "propaganda," or any communication or expression intends to, prevail upon, indoctrinate, convert, induce or in any other way influences another individual.

T.      **"Person"** means a natural Person, an organization, or other legal entity, including a federal government agency or entity, state government entity, county government entity, municipal government entity, tribal government entity, corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any group or combination acting as an entity.

U.      **"Plaintiffs"** refers to the plaintiffs in this action: The Daily Wire, LLC, FDRLST Media, LLC, and the State of Texas. "Media Plaintiffs" refer to the Daily Wire and FDRLST Media.

---

[4] https://2017-2021.state.gov/disinfo-cloud-launch/

V.     **"Relates to," "relating to," "refers to," or "referring to"** means involving, discussing, identifying, referring to, concerning or in any way touching upon the matter sought.

W.     **"Search Terms"** mean the following terms, deemed to be case-neutral and thus inclusive of both uppercase and lowercase letters, and deemed so that singular includes plural and vice versa: "Ad Fontes" "Albany Associates" "Alliance for Securing Democracy" "Amy Westfeldt" "Andrew Klavan" "ASD" "Becera" "Ben Domenech" "Ben Shapiro" "Bentkey" "biolabs" "Brett Cooper" "Brian Murphy" "Brill" "Candace Owens" "COVID" "CPD" "CredCatalog" "Crovitz" "Daily Wire" "Denise DiStephan" "DFRL" "Digital Forensic Research Lab" "disinfo" "Disinfo Cloud" "disinformation" "Disinformation Index" "DW" "DW+" "FDRLST" "Federalist" "Fighting Disinformation Online" "Frisbie" "Full Fact" "GARM" "GDI" "GEC" "Global Alliance for Responsible Media" "Global Disinformation Index" "Global Engagement Center" "IFCN" "International Fact-Checking Network" "Jack Brewster" "Jain" "Jeremy Boreing" "John Gregory" "Jordan Peterson" "Journalism Trust Initiative" "JTI" "Kevin Gross" "Lead Stories" "Logically" "Logically.AI" "Lyric" "malinfo" "malinformation" "Matt Walsh" "MDM" "Media Literacy" "MediaWell" "MediaWise" "Media Wire" "Melford" "Michael Knowles" "misinfo" "misinformation" "Misinformation Review" "Mollie Hemingway" "Mollie Hemmingway" "Molly Hemingway" "Molly Hemmingway" "Moonshot" "National Democratic Institute" "NDI" "Nemr" "NewsGuard" "Omelas" "Ondrak" "Park Advisors" "Park Capital" "Peak Metrics" "Politifact" "Public Editor" "Sean Davis" "Skibinski" "Stewart" "TCM" "TE" "Technology Engagement" "TED" "Testbed" "TET" "The Critical Mass" "The Daily Wire" "The Federalist" "ThunderCat" "Valerie Pavilonis" "WFA" "What is a Woman" "World Federation of Advertisers" "Zack Fishman" "@FDRLST" "@RealDailyWire".

X.     **"Speech"** means any communication in any form, including, but not limited to, communication expressed orally, in writing, or visually.

Y.     **"State Government"** means any branch of the State government, including any agency, instrumentality, or political subdivision of a State, including, but not limited to, any officers, department, division, bureau, board, or commission.

Z.     **"Technology Platforms"** means any organization that provides a service for public users to disseminate or receive speech, expression, information, or other content (typically content that includes messages, videos, photographs, and/or sound files). "Technology Platforms" include both the organizations and any of their officers, agents, employees, contractors, or any other Person employed by or acting on behalf of the Technology Platforms, as well subcontractors or entities used to conduct fact-checking or any other activities relating to Content Modulation. "Technology Platforms" include but are not limited to: Alphabet (Google and YouTube), Meta (Facebook, Facebook Messenger, Threads, and Instagram), X (f/k/a Twitter), Snapchat, Tik Tok, NextDoor, LinkedIn, Reddit, WeChat, Weibo, Wikipedia, and Pinterest.

AA.    **"Tech Challenge"** means any workshops convened by GEC to understand, assess, and find ways to implement effective tech solutions to MDM.[5]

BB.    **"Tech Testbed"** means any program Defendants run to test specific tools or technologies against a submitted proposal to determine existing capabilities or implement novel tech solutions for a rapid assessment of technologies, whether the program was run as part of the Disinfo Cloud testbed or another platform.[6]

---

[5] https://www.state.gov/programs-technology-engagement-division/.
[6] *Id.*

CC.    **"Tech-Driven Operation"** will be used according to the meaning Defendants gave the program of the same name.[7]

DD.    **"Technology Engagement Division"** and **"Technology Engagement Team"** means the division of the same name within Global Engagement Center, whether referred to as the Technology Engagement Division, TED, the Technology Engagement Team, TET, or TE. This definition includes any Person or Persons working on behalf of any of those divisions, including, but not limited to, employees, consultants, contractors, detailees, interns, or fellows, whether they are paid or unpaid by the Department individually, collectively, or in any combination. This includes, but is not limited to, Alexis Frisbie, in her official capacity as the Senior Technical Advisor of the Technology Engagement Team for the Global Engagement Center at the State Department; Patricia Watts, in her official capacity as the Director of the Technology Engagement Team at the Global Engagement Center at the State Department.

## <u>INSTRUCTIONS FOR REQUEST FOR PRODUCTION</u>

A.    **Applicable Time Period:** Unless otherwise specified, the time period covered by these Requests shall not be limited, and You should provide all Communications, Documents, and Information requested, regardless of dates or time periods involved.

B.    **Scope of Search:** These Requests cover Communications, Documents, and Information in the actual or constructive possession, custody, or control of You, Your attorneys, employees, consultants, contractors, detailees, interns, or fellows, whether they are paid or unpaid by the State Department, as well as any entities from which You have access to Communications, Documents, and Information related to these Requests, and any other Person from whom You can obtain such

---

[7] *Id.*

Communications, Documents, and Information, by request or from whom You have a right to bring such Communications, Documents, and Information within Your possession by demand.

C.       **Ongoing Duty to Supplement:** These Requests are ongoing in nature. Responsive Documents obtained or discovered after Your initial response and production must be produced promptly through the completion of this action.

D.       **Rules of Construction:** Wherever used herein, the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; the use of the past, present, or future tense of any word shall be deemed to include the other tenses; "including" means "including, but not limited to"; the disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive shall be deemed to include the disjunctive; each of the functional words "each," "every," "any," and "all" shall be deemed to include each of the other functional words; "between" and "among" shall be deemed to include each other; and "referring to" or "relating to" mean discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to— in whole or in part.

E.       **Objections:** If You object to any part of a request, You shall produce Documents and Communications that are responsive to all parts of such Request to which You do not object. Furthermore, pursuant to Fed. R. Civ. P. 34(b)(2)(C) and Fed. R. Civ. P. 26(b)(5), You must state whether any responsive materials are being withheld on the basis of such objection.

F.       **Previously Supplied Materials:** If You have previously supplied to Plaintiffs any Communications, Documents, or Information responsive to a Request, You may, in lieu of re-submitting those materials, identify the materials.

G.      **Production Requirements:** In producing Communications, Documents, and Information consisting of electronically stored information in response to any document request, provide such data in a form that does not require specialized or proprietary hardware or software. Organize and label them to correspond to the categories in the request pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i).

H.      **Sensitive Information:** If any material called for by these requests contains sensitive, personally identifiable information or sensitive health information of any individual, please contact the undersigned counsel before sending those materials to discuss ways to protect such information during the course of discovery production. For purposes of these requests, sensitive personally identifiable information includes: an individual's Social Security number alone; an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number. Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

I.      **Undefined Terms:** To the extent that terms are not defined, please use the term's everyday meaning.

## <u>INSTRUCTIONS FOR INTERROGATORIES</u>

A.      Unless otherwise specified, the time period covered by these Interrogatories shall not be limited.

B.      Each Interrogatory and part thereof shall be answered separately and completely, without reference to an answer to any other Interrogatory.

C.      If you learn that in some material respect your response to any of the following Interrogatories is incomplete or incorrect, and the additional or corrective information has not otherwise been made available to Plaintiff during the discovery process or in writing, then you must supplement your response as provided in Fed. R. Civ. P. 26(e).

D.      These Interrogatories shall be deemed continuing, and the responses shall be reasonably amended or supplemented as provided in Fed. R. Civ. P. 26(e).

E.      With respect to information as to which you claim privilege or otherwise object, you must state the grounds for each objection with specificity, as set forth in Fed. R. Civ. P. 33(b)(4). Pursuant to Fed. R. Civ. P. 34(b)(2)(c), you must state whether any responsive materials are being withheld on the basis of your objection.

F.      Where a claim of privilege is asserted in objecting to any of the Interrogatories, identify the nature of the privilege (including work product) that is being claimed. Provide the following information in the objection unless divulgence of the information would cause disclosure of the allegedly privileged information:

a.      For documents: (1) the type of document (*e.g.*, letter or memorandum); (2) the general subject matter of the document; (3) the date of the document; (4) the document's author, addressees, and other recipients; and (5) where not apparent, the relationship of the author, addressees, and recipients to one another;

b.      For oral communications: (1) the name of the Person making the communication and the names of Persons present when the communication was made and, where not apparent, the relationship of the author, addressees, and recipients to each other; (2) the date and place of the communication; and (3) the general subject matter of the communication.

11

      c.     For claims of deliberative process privilege, an affidavit or declaration: (1) establishing that the agency head, or duly appointed delegee, has personally considered the Document or Information; (2) identifying and describing the Document(s) or Information sought to be protected with particularity; and (3) providing precise and certain reasons for maintaining the confidentiality of the Document(s) or information.

G.     In the event that the answer to an Interrogatory is "do not know," "unknown," "that information is unavailable," or the like, explain in detail the efforts made to obtain information to answer the Interrogatory.

Dated: May 2, 2024

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General of Texas

RALPH MOLINA
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Chief, Special Litigation Division

*/s/ Susanna Dokupil*
SUSANNA DOKUPIL
Lead Attorney Special Counsel
Texas Bar No. 24032801

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

JACOB E. PRZADA
Special Counsel
Texas Bar No. 24125371

Office of the Attorney General of Texas
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
Phone: (512) 936-3754

*Attorneys for Plaintiff the State of Texas*

*/s/ Margaret A. Little*
Margaret A. Little
Lead Attorney
Senior Litigation Counsel
Connecticut Bar No. 303494
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238

*/s/ Margot J. Cleveland*
Margot J. Cleveland
Of Counsel
Michigan Bar No. 83564
NEW CIVIL LIBERTIES ALLIANCE
Margot.Cleveland@ncla.legal

*/s/ Casey Norman*
Casey Norman
Litigation Counsel
New York Bar No. 5772199
NEW CIVIL LIBERTIES ALLIANCE
Casey.Norman@ncla.legal

*Counsel for Plaintiffs The Daily Wire Entertainment LLC and FDRLST Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2024, I electronically filed the foregoing Addendum with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Margot J. Cleveland
Margot J. Cleveland

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| THE DAILY WIRE, LLC;<br><br>FDRLST MEDIA, LLC; and<br><br>THE STATE OF TEXAS, by and through its<br>Attorney General, Ken Paxton,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>DEPARTMENT OF STATE;<br><br>GLOBAL ENGAGEMENT CENTER;<br><br>ANTONY BLINKEN, in his official capacity as<br>Secretary of State;<br><br>LEAH BRAY, in her official capacity as Deputy<br>Coordinator of the State Department's Global<br>Engagement Center;<br><br>JAMES P. RUBIN, in his official capacity as<br>Coordinator for the Global Engagement Center of the<br>State Department;<br><br>DANIEL KIMMAGE, in his official capacity as the<br>Principal Deputy Coordinator for the Global<br>Engagement Center at the State Department;<br><br>ALEXIS FRISBIE, in her official capacity as Senior<br>Technical Advisor of the Technology Engagement<br>Team for the Global Engagement Center at the State<br>Department;<br><br>PATRICIA WATTS, in her official capacity as the<br>Director of the Technology Engagement Team at the<br>Global Engagement Center at the State Department,<br><br>       *Defendants*. | Civil Action No.: 6:23-cv-00609 |

1

# [PROPOSED] ORDER

Before the Court is the motion of Plaintiffs, The Daily Wire, LLC, FDRLST Media, LLC, and the State of Texas, for Expedited Preliminary-Injunction-Related Discovery. After considering the Motion, the Court finds good cause supports Plaintiffs' request for limited Preliminary-Injunction-Related Expedited Discovery and therefore the Motion is hereby **GRANTED.**

It is hereby **ORDERED** that:

1. Within five business days of this Court's ruling on this Motion, Plaintiffs may serve interrogatories and document requests on Defendants and may serve no more than five subpoenas on third parties.

2. Defendants and third parties shall provide responses and objections within thirty days of service.

3. Within ten days of the receipt of the responses, objections, and the production of responsive documents, the parties shall meet and confer in good faith about any discovery dispute, after which the parties shall submit a joint statement to the Court identifying the nature of any unresolved dispute.

4. Within ten days of the receipt of the responses, objections, and any responsive documents, Plaintiffs shall notify Defendants whether they will seek additional third-party subpoenas or depositions pursuant to Rule 30(a)(2) of the Federal Rules of Civil Procedure.

5. Within seven days of receiving notice of the depositions and additional third-party subpoenas sought by Plaintiffs, the parties shall meet and confer regarding the additional discovery requests. Should the parties reach an impasse, they shall submit

separate statements to the Court stating their positions on each requested subpoena and deposition.

6.   Thereafter, this Court shall determine any outstanding discovery disputes, after which Plaintiffs will have ten days to serve any additional third-party subpoenas and thirty days to complete any authorized depositions.

7.   Within twenty days after all authorized depositions are taken, Plaintiffs may supplement their previous memoranda in support of their Motion for a Preliminary Injunction.

8.   Within twenty days after Plaintiffs file their supplemental memorandum, Defendants may file a supplemental memorandum in response to the Motion for Preliminary Injunction.

9.   Within ten days after Defendants file their supplemental memorandum, Plaintiffs may file a reply.


So **ORDERED** and **SIGNED** this_____ day of _____, 2024.


_____

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE