# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |
|---|---|
| THE DAILY WIRE, LLC *et al.*,<br><br>        Plaintiffs<br>    v.<br><br>UNITED STATES DEPARTMENT<br>OF STATE *et al.*,<br><br>        Defendants. | Civil Action No. 6:23-cv-00609 (JDK) |

## DEFENDANTS' ANSWER

Defendants hereby answer Plaintiffs' Complaint, ECF No. 1, as follows:

## NATURE OF THE ACTION

Defendants note that the Complaint contains headers and sub-titles, which do not consist of numbered paragraphs. To the extent those headers contain allegations requiring a response, denied. Those headers and sub-titles are included in this Answer solely for the convenience of the reader in cross-referencing the allegations in the Complaint with the response in the Answer. Additionally, the unnumbered introductory paragraph in the Complaint consists of Plaintiffs' characterizations of this action, which require no response. To the extent those characterizations contain allegations requiring a response, denied.

1.      Denied.

2.      This paragraph consists of legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is deemed required, denied.

3.      With respect to the first sentence of this paragraph, denied. As to the second sentence of this paragraph, Defendants admit that Disinformation Index Ltd. ("GDI"), and NewsGuard Technologies, Inc. ("NewsGuard") received subawards in 2020 and 2021 under a Global Engagement

Center ("GEC") grant to Park Capital Investment Group ("Park Advisors"), admit that one of each of these companies' Tweets were retweeted on the Disinfo Cloud's now-retired Twitter account in 2021, and admit that GDI was referenced in the now-retired Disinfo Cloud Digest, but deny the remainder of the allegations in this sentence, which consist of Plaintiffs' characterizations. As to the third sentence of this paragraph, Defendants lack sufficient knowledge to admit or deny.

4.     Defendants deny the allegation that GDI and NewsGuard are "government-funded and government-promoted censorship enterprises," and that Defendants have an "unlawful censorship scheme" or caused Media Plaintiffs harm. In all other respects, Defendants lack sufficient knowledge to admit or deny this paragraph.

5.     Denied.

6.     This paragraph consists of legal conclusions and characterizations of Plaintiffs' claims to which no response is required. To the extent a response is deemed required, deny that Plaintiffs are entitled to any relief.

## JURISDICTION AND VENUE

7.     This paragraph consists of legal conclusions regarding jurisdiction to which no response is required. To the extent a response is deemed required, admitted that Plaintiffs' claims arise under the Constitution and federal laws and that the agencies, officers, and/or the employees of the United States are Defendants but denied that the Court has subject-matter jurisdiction over this case because, in Defendants' view, Plaintiffs lack Article III standing.

8.     This paragraph consists of characterizations of Plaintiffs' request for relief to which no response is required. To the extent a response is deemed required, admitted.

9.     This paragraph consists of legal conclusions regarding venue to which no response is required. To the extent a response is deemed required, denied.

10.     This paragraph consists of legal conclusions regarding the Court's authority to which

no response is required. To the extent a response is deemed required, denied.

**PARTIES**

11.     Defendants lack sufficient knowledge to admit or deny this paragraph.

12.     Defendants lack sufficient knowledge to admit or deny this paragraph.

13.     Admitted.

14.     The first sentence of this paragraph consists of Plaintiffs' characterizations of the purposes of this lawsuit, to which no response is required. The second sentence consists of legal conclusions and characterizations of Plaintiffs' claims to which no response is required. Defendants lack sufficient knowledge to admit or deny the third sentence.

15.     Admitted.

16.     Admitted.

17.     Defendants admit that the GEC is housed in, and funded by, the State Department. Defendants deny that the GEC is an "interagency center."

18.     Defendants admit that Leah Bray is the Deputy Coordinator for Policy, Plans, and Operations at the GEC and that she is sued in her official capacity.

19.     Defendants admit that James P. Rubin is the Special Envoy and Coordinator for the GEC and that he is sued in his official capacity.

20.     Admitted.

21.     Admitted.

22.     Defendants admit that Patricia Watts was formerly the director of the Technology Engagement Team ("TET") of the GEC, and that she is sued in her official capacity, but deny that she currently serves in that role. Defendants further aver that Ms. Watts is currently serving as the Acting Deputy Coordinator for Support for the GEC.

23.     This paragraph consists of characterizations of Plaintiffs' claims to which no response

is required.

## GENERAL ALLEGATIONS

24.     This paragraph consists of Plaintiffs' characterizations of history that purportedly underlies their claims, to which no response is required.

25.     Defendants admit that this paragraph cites a CNN.com article indicating that in 1960 there were "three channels (CBS, NBC, and ABC)". Defendants otherwise lack sufficient knowledge to admit or deny the allegations in this paragraph.

26.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

27.     Defendants admit that this paragraph cites an article indicating that there was "a proliferation of news providers and platforms" in the "digital era." Defendants otherwise lack sufficient knowledge to admit or deny the allegations in this paragraph.

28.     Defendants admit that the quoted material appears in the cited article. Defendants otherwise lack sufficient knowledge to admit or deny the allegations in this paragraph.

29.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

30.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

31.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

32.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

33.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

34.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

35.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

36.      Denied.

37.      As to the first sentence, which consists of Plaintiffs' characterization of public perception, Defendants lack sufficient knowledge to admit or deny the allegations. As to the second sentence, denied.

38.      This paragraph consists of characterizations of Plaintiffs' claims to which no response is required. To the extent a response is deemed required, denied.

*"Media Plaintiffs: The Daily Wire and The Federalist"*

39.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

40.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

41.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

42.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

43.      This paragraph consists of legal conclusions to which no response is required.

44.      Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

*"Federal Government Conspires with Big Tech & Social Media Outlets to Silence New Media"*

45.      Denied. Defendants further aver that the allegations in this paragraph rely solely on

judicial opinions that have since been reversed by the Supreme Court. See *Murthy v. Missouri*, 144 S. Ct. 1972 (2024).

46.     Denied. Defendants further aver that the allegations in this paragraph rely solely on judicial opinions that have since been reversed by the Supreme Court. *See id.*

47.     Denied. Defendants further aver that the allegations in this paragraph rely solely on judicial opinions that have since been reversed by the Supreme Court. *See id.*

## *"State Department's GEC Leads One Arm of the Government's Censorship Complex, Targeting Speech by Americans, to Americans, in America"*

48.     Denied.

49.     Defendants admit that GEC is housed within the Department of State, and that in 2011, Executive Order 13584 tasked the Department of State's Center for Strategic Counterterrorism Communications ("CSCC") with coordinating Government-wide public communications activities directed at audiences abroad and targeted against violent extremism and terrorist organizations. Defendants deny that GEC is a "multi-agency center."

50.     Defendants admit that Executive Order 13721, issued in 2016, revoked Executive Order 13584, and established the Global Engagement Center within the Department of State to coordinate Government-wide communications activities directed at foreign audiences abroad in order to counter the messaging and diminish the influence of international terrorist organizations and other violent extremists abroad. In all other respects, denied.

51.     Admitted.

52.     Defendants admit that, after amendments to section 1287 of FY 17 NDAA in the FY 19 NDAA, GEC's statutorily-identified purpose includes countering foreign state and foreign non-state propaganda and disinformation efforts aimed at undermining or influencing the policies, security, or stability of the United States and United States allies and partner nations. In all other respects, denied.

53.     With respect to the first sentence, Defendants admit that the GEC's purpose, as established by statute, is to direct, lead, synchronize, integrate, and coordinate efforts of the Federal Government to recognize, understand, expose, and counter foreign state and foreign non-state propaganda and disinformation efforts aimed at undermining or influencing the policies, security, or stability of the United States and United States allies an partner nations. In all other respects, denied. With respect to the second sentence, Defendants admit that the quoted language is incorporated in section 1287 of FY 17 NDAA.

*"GEC Violates Its Congressional Mandate by Targeting Americans' Speech"*

54.     Denied.

*"Disinfo Cloud: State Department's Alter Ego"*

55.     Admitted that the GEC awarded an approximately three-million-dollar grant to Park Capital Investment Group LLC ("Park Advisors") to perform activities related to countering foreign propaganda and disinformation in September 2018, and that Park Advisors was a private, for-profit entity that is now closed. No response is required as to Plaintiffs' characterization of Park Advisors as the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied. Defendants otherwise deny the allegations in this Paragraph.

56.     Denied.

57.     Denied, except Defendants admit that GEC used Park Advisors to develop and manage multiple initiatives of the GEC and Park Advisors launched the Disinfo Cloud platform.

58.     Admitted. Defendants respectfully refer the Court to the September 2022 report from the Office of the Inspector General ("OIG") referenced in this paragraph for a complete and accurate statement of its contents.

59.     As to the first sentence, Defendants admit that Park Advisors awarded a $100,000 subgrant to the London-based company Disinformation Index Ltd. as a part of the U.S.-Paris Tech

Challenge in 2021. Defendants also admit that the U.S.-Paris Tech Challenge was an invitation-only event meant to counter propaganda and disinformation in Europe. In all other respects, denied. As to the second sentence, Defendants admit that this is how the event is described on the referenced website but aver that the event was not sponsored in collaboration with Disinfo Cloud because Disinfo Cloud was a platform managed by Park Advisors, not an entity.

60.     Defendants admit that Christina Nemr served as the director of Park Advisors and the administrator of Disinfo Cloud but otherwise lack sufficient information to admit or deny the allegations in this paragraph.

61.     Defendants admit that Park Advisors managed Disinfo Cloud under its grants from the GEC. Defendants lack sufficient knowledge to admit or deny the remainder of allegations in this paragraph.

62.     Admitted. Defendants respectfully refer the Court to the OIG report referenced in this paragraph for a complete and accurate statement of its contents.

63.     Defendants admit that in a September 2022 OIG Report, the OIG found GEC lacked "necessary internal controls to ensure contractors did not perform inherently governmental functions." Defendants respectfully refer the Court to the OIG report referenced in this paragraph for a complete and accurate statement of its contents. In all other respects, denied.

*"Disinfo Cloud Served as a De Facto Arm of GEC's TET"*

64.     Denied.

65.     Defendants admit that Disinfo Cloud was a platform that acted as a repository to catalog technologies to counter foreign information manipulation. Defendants further aver that Disinfo Cloud was a former platform and is no longer in use. In all other respects, denied.

66.     Admitted that the quoted description of Disinfo Cloud was included on an archived version of the State Department's website.

8

67.     Admitted, except to deny that the quoted language is a direct quote from the cited website. The reference to entities being "significant to this complaint" is a characterization of Plaintiffs' claims to which no response is required. To the extent a response is deemed required, denied

68.     Denied.

69.     Defendants admit that the flyer available on the referenced website refers to fact-checking technologies, media literacy, media intelligence platforms, social network mapping, and machine learning/artificial intelligence, but deny that Disinfo Cloud contained the technologies themselves.

70.     Defendants admit that the actions alleged in the paragraph were taken, but aver that they were taken by Park Advisors or GEC. Defendants deny that Disinfo Cloud took the actions described in this paragraph as Disinfo Cloud was a repository where assessments of technologies were stored.

71.     As to the first sentence, Defendants deny that Disinfo Cloud took the alleged actions, deny that these technologies amount to "censorship tools and technologies," and admit that Park Advisors or GEC would conduct further research of technologies as described in the video at the time stamp indicated in footnote 44 of the Complaint. Defendants respectfully refer the Court to the referenced video for a complete and accurate statement of its contents. As to the second sentence, deny that Disinfo Cloud compiled any reports, but admit that Park Advisors or GEC compiled the alleged reports.

72.     Defendants admit that Park Advisors and GEC identified and assessed over 365 tools and technologies, and this information was placed on Disinfo Cloud, but deny that these technologies were "identified and assessed" by Disinfo Cloud.

73.     Defendants admit that the Disinfo Cloud webpage was originally available only to ".mil and .gov" users. In all other respects, denied.

74.     Admitted that Nemr was the Administrator of Disinfo Cloud and that she made the statement referenced in the cited video. Defendants respectfully refer the Court to the referenced video for a complete and accurate statement of its contents.

*"GEC Takes Its Censorship Team on the Road"*

75.     Denied.

76.     As to the first sentence, denied. As to the second sentence, Defendants admit that the quoted language is contained on the referenced website. In all other respects, denied.

*"The State Department Gifts the Tech Industry GEC's Censorship Infrastructure"*

77.     Denied.

78.     Defendants admit that Samaruddin Stewart was a Senior Advisor with the GEC and that he had meetings to discuss countering foreign disinformation with social media platforms. Defendants lack sufficient information about the documents produced by other defendants or third parties in *Missouri v. Biden* to admit or deny the remainder of the allegations in this paragraph.

79.     Admitted, except that Defendants deny that "Disinfo Cloud marketed itself," and aver that Park Advisors marketed Disinfo Cloud as such.

80.     Admitted.

81.     Defendants admit that Defendant State Department's webpage contains the quoted material. Denied that this encompassed "American technology companies."

82.     Defendants admit that Disinfo Cloud contained a newsfeed of the latest research, news, and related events published by third parties. Denied that Disinfo Cloud contained a "repository of censorship tools and technologies."

*"Saying the Quiet Part Out Loud"*

83.     Defendants admit that the quoted language is contained in the referenced video. Defendants respectfully refer the Court to the referenced video for a complete and accurate statement

of its contents.

84.     Defendants admit that Alexis Frisbie stated that the GEC is "certainly not looking to influence anything on the national level." In all other respects, denied.

85.     Defendants admit that the quoted language is reflected in documents cited in in the referenced court opinion, but aver that these statements come from Daniel Kimmage, not Alexis Frisbie. Defendants respectfully refer the Court to the referenced opinion for a complete and accurate statement of its contents.

86.     Denied.

**"*Disinfo Cloud's Other Censorship-Promoting Activities*"**

87.     As to the first sentence, Defendants admit that Park Advisors maintained a Twitter account for Disinfo Cloud which is still publicly available (although it has been inactive since 2021). Defendants deny that Disinfo Cloud maintained a Twitter account for itself. No response is required as to Plaintiffs' characterization of Disinfo Cloud as the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied. As to the second sentence, Defendants admit that the quoted language appears in the pictures in this paragraph, and respectfully refers the Court to the pictures for a complete and accurate picture of their contents. Defendants otherwise deny the allegations in this paragraph.

88.     As to the first sentence, Defendants admit that the Disinfo Cloud Digest was launched by Park Advisors in December 2020 and was a weekly newsletter. In all other respects, denied. As to the second sentence, admitted.

89.     Defendants admit that on April 6, 2021, the Disinfo Cloud Digest stated, "NewsGuard launched a new tool, Responsible Advertising for News Segments (RANS), to help advertising companies avoid websites known to host or produce mis/disinformation." In all other respects, denied.

**"*Disinfo Cloud Served as Defendant State Department's Alter Ego in Running TET's Testbed*"**

90.     Defendants admit that Disinfo Cloud was labeled as a "gateway" to the TET's Testbed initiative, but deny that Disinfo Cloud "managed" the initiative. No response is required as to Plaintiffs' characterization of Disinfo Cloud as the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied.

91.     Defendants admit that the Testbed program seeks to counter foreign propaganda and disinformation by testing specific tools or technologies against a submitted proposal for a rapid assessment of technologies that are employed against real operational challenges. No response is required as to Plaintiffs' characterization of propaganda as "supposed propaganda." To the extent a response is required, denied.

92.     Defendants admit that the Testbed program was established to rapidly identify, assess, and test technologies to counter adversarial propaganda and disinformation and that the testbed ran pilots of the technologies. Denied that the technologies are "censorship technologies."

93.     Defendants deny that pilots of technology in connection with the Testbed target domestic speech, including Media Plaintiffs' speech.

94.     Denied.

95.     Defendants admit that Disinfo Cloud users included some members of academia, the private sector, and tech vendors, including some located within the United States. Defendants also admit that Disinfo Cloud users were able to ask for assistance in identifying a technological solution or draft a test proposal for a tool, but aver that this feature was intended for foreign governments and interagency partners. In all other respects, denied.

**"*GEC Hosted Tech Challenges to Find and Fund Censorship Technology Through Its Alter Ego Disinfo Cloud*"**

96.     Denied. No response is required as to Plaintiffs' characterization of Disinfo Cloud as

the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied.

97.     Admitted, but aver that tech challenges were aimed at countering disinformation and propaganda overseas.

98.     Defendants admit that, under a grant from the GEC, Park Advisors supported the administration of three international Tech Challenges, where over 110 technologies were identified. In all other respects, denied.

99.     Denied. Defendants aver that the tools and technologies identified through the tech challenges are content neutral in that they do not themselves "target" particular audiences, and that the purpose of the tech challenges is to identify tools and technologies only for the purpose of countering foreign disinformation and propaganda. To the extent that Plaintiffs' allegations concern how tools and technologies are leveraged by individuals or entities outside of the Department of State, Defendants lack sufficient information to admit or deny.

100.     As to the first sentence, admitted. As to the second sentence, denied.

### *"At Least Two Censorship Technologies Funded and/or Promoted by GEC Targeted Media Plaintiffs"*

101.     Admitted that Disinfo Cloud included assessments of over 365 tools and technologies, including GDI and NewsGuard. In all other respects, denied.

102.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

103.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

104.     Denied.

### *"GDI's Blacklist"*

105.     Defendants admit that the referenced website contains the quoted material. For all

other purposes, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

106.    Defendants deny that the referenced website contains the quoted material. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

107.    Admitted.

108.    Defendants admit that the referenced website contains the quoted material. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

109.    As to the first sentence, denied. As to the second sentence, Defendants admit that the referenced document contains the quoted material. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations.

110.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

111.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

112.    Defendants admit that the referenced article contains the quoted material. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

113.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

114.    Defendants admit that GDI received funding under a State Department grant, but aver that Defendants did not fund or participate in the creation of the Dynamic Exclusion List. With respect to the rest of the allegation in this paragraph, denied.

*"GDI's Less Secret Blacklist"*

115.   As to the first sentence, Defendants admit that GDI published a report which included a list of the 10 "least risky" and the 10 "most risky" of only those sixty-nine news sites manually reviewed for the purposes of that report, but aver that Defendants did not fund or participate in the creation of the report or the Dynamic Exclusion List. As to the second sentence, Defendants admit that the referenced website contains the quoted material. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations.

116.   Defendants admit that, in GDI's 2022 Disinformation Risk Assessment Report, Media Plaintiffs were listed among the "riskiest sites." As to the date of the report, denied as Defendants understand that the report was published in November 2022.

*"NewsGuard's Rating Service Also Seeks to Censor Speech"*

117.   Defendants admit that NewsGuard rates the credibility of news sources, but in all other respects, lack sufficient knowledge to admit or deny the allegations in this paragraph.

118.   Admitted that the cited webpage contains the quoted language. For all other purposes, Defendants lack sufficient knowledge to admit or deny the allegations.

119.   Defendants admit that the quoted language appears on the referenced website. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

120.   Defendants admit that the quoted language appears on the referenced website. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

121.   Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

122.   Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

*"The Press Non Grata"*

123.     Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

124.     Denied.

*"GEC Funds GDI"*

125.     Defendants admit that the London-based company Disinformation Index Ltd. received a $100,000 subgrant from Park Advisors as a part of the U.S.-Paris Tech Challenge in 2021.

126.     Admitted, except that Defendants deny that GDI "blacklisted Media Plaintiffs" and deny that the tech challenges only "purport[]" to fund foreign-based technology and technology companies.

127.     Admitted.

128.     Defendants admit that Daniel Rogers, Co-founder and a Director of the Disinformation Index Ltd., stated at the 2021 U.S.-Paris Tech Challenge that GDI was giving the "ad tech industry" the "ability to steer ad dollars away from disinformation and towards quality journalism." Defendants respectfully refer the Court to the video for a complete and accurate statement of its contents. In all other respects, denied.

129.     Defendants admit that Daniel Rogers, Co-founder and a Director of the Disinformation Index Ltd., stated the quoted language in the referenced video during the U.S.-Paris Tech Challenge. Defendants respectfully refer the Court to the video for a complete and accurate statement of its contents.

130.     Defendants admit that the quoted language appears on the referenced website. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations.

131.     Defendants admit that Clare Melford stated the quoted language in the referenced video. Defendants respectfully refer the Court to the video for a complete and accurate statement of

its contents. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations.

132.    Defendants admit that Patricia Watts stated the quoted language in the referenced video, but deny that she "championed GDI and the other censorship enterprises." Defendants respectfully refer the Court to the video for a complete and accurate statement of its contents.

133.    Defendants admit that the London-based company Disinformation Index Ltd. received a $100,000 subgrant from Park Advisors as a part of the U.S.-Paris Tech Challenge in 2021 and that GDI was mentioned on the Disinfo Cloud Twitter platform. No response is required as to Plaintiffs' characterization of Disinfo Cloud as the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied. In all other respects, denied.

### *"GDI's Government-Sponsored Blacklist is Exposed"*

134.    Defendants admit that the referenced website is entitled "Disinformation Inc: Watchdog launches sweeping investigation into conservative blacklists." Defendants respectfully refer the Court to the article for a complete and accurate statement of its contents. In all other respects, denied.

### *"NED's Funding of the Disinformation Index, Inc."*

135.    Defendants admit that the referenced website reflects that the National Endowment for Democracy ("NED") awarded "Disinformation Index, Inc." a $315,570 award for "Strengthening Information Integrity in the Digital Space." In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations.

136.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

137.    Defendants admit that Disinformation Index, Inc. is the United States-based affiliate of the British-based Disinformation Index, Ltd. In all other respects, Defendants lack sufficient

knowledge to admit or deny the allegations.

138.    As to the first sentence, Defendants lack sufficient knowledge to admit or deny the allegations. As to the second sentence, Defendants admit that at least one of the referenced websites contains the quoted material. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations.

139.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

140.    Admitted that the referenced website contains the quoted material. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations.

141.    Denied that the referenced website contains the quoted material. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

*"Disinfo Cloud Funneled Money to Other American Censorship Companies"*

142.    Admitted.

143.    Defendants admit that NewsGuard, Peak Metrics, and Omelas were named winners of the 2020 NSIN Challenge. In all other respects, denied.

144.    Defendants admit that winners of the tech challenge received a $25,000 government-funded award. No response is required as to Plaintiffs' characterization of Disinfo Cloud as the Department of State's "alter ego," which Plaintiffs do not define. To the extent a response is required, denied. In all other respects, denied.

145.    Defendants admit that winners received $25,000 for a test in connection with the Testbed initiative; in all other respects, denied.

146.    Admitted that the cited press release contains the quoted material. In all other respects, denied.

147.    Denied that NewsGaurd used its technology in connection with the NSIN tech

challenge to rate American media outlets. In all other respects, Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

148.    Admitted that the quoted language appears on the referenced website. Defendants respectfully refer the Court to the referenced website for a complete and accurate statement of its contents.

149.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph.

150.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph, but aver that the purpose of work done under the Testbed in connection with the NSIN Challenge was focused on countering foreign disinformation and propaganda.

151.    Admit that PeakMetrics received a $25,000 award under the NSIN Challenge. In all other respects, denied.

152.    Admitted that Omelas was named a winner of the 2020 NSIN Challenge, and that the quoted language appears on the referenced website. Defendants respectfully refer the Court to the referenced website for a complete and accurate statement of its contents.

153.    Admit that Omelas received a $25,000 award under the NSIN Challenge. In all other respects, denied.

154.    Denied.

*"Disinfo Cloud: Cheerleaders for NewsGuard"*

155.    Admitted that NewsGuard was at one point mentioned on the DisinfoCloud Twitter feed, but Defendants lack sufficient knowledge to admit or deny the allegations as to the Tweet mentioned in this paragraph.

156.    Admitted that NewsGuard was featured in at least one Disinfo Cloud Digest. In all other respects, denied.

19

*"GEC Funded and Promoted Hundreds of Censorship Tools"*

157.   Denied.

158.   Denied.

159.   Denied.

*"Media Plaintiffs Suffer Ongoing Harm from Alter Ego Disinfo Cloud's Abridgment of Their First Amendment Rights"*

160.   Admitted.

161.   Defendants admit that the Disinfo Cloud platform and the Disinfo Cloud Digest have been retired. Defendants also admit that Disinfo Cloud's Twitter account remains accessible and has posts that reference and/or link to GDI, NewsGuard, and the DisinfoCloud Digest. In all other respects, denied.

162.   Denied.

163.   Denied.

164.   As to the first sentence, denied. The second and third sentences contain legal conclusions to which no response is required. To the extent a response is required, denied.

*"Defendants Continue to Infringement on Media Plaintiffs' First Amendment Rights"*

165.   Defendants admit that DisinfoCloud.com is no longer publicly accessible, but deny the remainder of the allegations in this paragraph.

166.   Defendants admit that in the September 2022 OIG report, the OIG found that analytics platforms operated with unapproved non-governmental domain names. The remainder of the allegations consist of characterizations of the OIG report, to which no response is required. To the extent a response is deemed required, denied. Defendants respectfully refer the Court to the OIG report referenced in this paragraph for a complete and accurate statement of its contents.

*"The Censorship Continues"*

167.   Defendants admit that Disinfo Cloud and the Disinfo Cloud Digest have been retired

but deny the remainder of the allegations in this paragraph.

168.    Admitted.

169.    Denied. Defendants aver that the tools and technologies assessed by the GEC are content neutral in that they do not themselves "target" particular audiences, and that Defendants work with tools and technologies only for the purpose of countering foreign disinformation and propaganda. To the extent that Plaintiffs' allegations concern how tools and technologies are leveraged by individuals or entities outside of the Department of State, Defendants lack sufficient information to admit or deny.

170.    Defendants admit that the TET continues to host tech challenges, but deny the remainder of the allegations in this paragraph.

171.    Admitted.

172.    Denied.

173.    Denied.

174.    As to the first sentence, admitted. As to the second sentence, Defendants lack sufficient information to admit or deny how "counter-disinfo" "solutions, dashboards, and research" are leveraged or promoted by individuals or entities outside of the Department of State.

175.    Denied.

*"Meet the New Boss, Same as the Old Boss"*

176.    Defendants admit that the Disinfo Cloud platform is now retired. As to the specifics of Becera's founding, Defendants lack sufficient knowledge to admit or deny the allegation. In all other respects, denied.

177.    Defendants admit that the referenced website contains the quoted material.

178.    Defendants admit that Becera has received State Department funding through a sub-award under a GEC contract. Defendants lack sufficient information to admit or deny the allegations

regarding the amount of the award and the timing of the award. In all other respects, denied.

179.    Admitted.

180.    Denied.

## RELEVANT PRINCIPLES

### I.    THE FIRST AMENDMENT PROHIBITS ABRIDGEMENT OF THE RIGHT TO FREEDOM OF SPEECH AND FREEDOM OF THE PRESS

181.    This paragraph consists of legal conclusions to which no response is required.

182.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

183.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

184.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

185.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

186.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

187.    This paragraph consists of legal conclusions to which no response is required.

188.    This paragraph consists of legal conclusions to which no response is required.

189.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

190.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

191.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions

regarding that caselaw to which no response is required.

192.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

193.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

194.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

195.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

196.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

197.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

198.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

## II.    The GOVERNMENT MAY NOT DIRECTLY OR INDIRECTLY ABRIDGE THE FIRST AMENDMENT RIGHTS OF ITS CITIZENS

*"Defendant State Department's Own Conduct Abridged Plaintiffs' Rights"*

199.    This paragraph consists of legal conclusions to which no response is required.

200.    This paragraph consists of legal conclusions to which no response is required.

201.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

202.    This paragraph consists of Plaintiffs' characterization of caselaw and legal conclusions regarding that caselaw to which no response is required.

203.    Denied.

204.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

205.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

***"The State Department Defendants Are Also Responsible for Private Censorship Efforts"***

206.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

207.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

208.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

209.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

210.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

211.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

212.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

213.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

214.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

215.    Denied.

216.    Denied.

217.    Denied.

218.    Denied.

219.    Denied.

220.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

221.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

## III.    AGENCIES ARE ONLY PERMITTED TO EXERCISE CONGRESSIONALLY DELEGATED AUTHORITY

222.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

223.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

224.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

225.    This paragraph consists of legal conclusions to which no response is required.

226.    This paragraph consists of legal conclusions to which no response is required.

227.    This paragraph consists of legal conclusions to which no response is required.

228.    Denied.

229.    This paragraph consists of legal conclusions to which no response is required.

230.    This paragraph consists of legal conclusions to which no response is required.

## IV.    CONGRESS MAY NOT DELEGATE AUTHORITY VIOLATIVE OF THE CONSTITUTION

231.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions

regarding that caselaw to which no response is required.

232.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

233.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

## V.   DEFENDANTS UNLAWFUL ACTIONS INTERFERE WITH TEXAS

234.   Denied.

235.   Denied.

236.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

237.   Denied.

238.   Denied.

239.   Denied.

## VI.   DEFENDANTS' FUNDING, DEVELOPMENT, MARKETING, AND PROMOTION OF PRIVATE CENSORSHIP TOOLS, TECHNOLOGIES, AND CENSORSHIP ENTERPRISES IS A NON-FINAL UNLAWFUL AGENCY ACTION THAT MUST BE ENJOINED.

240.   This paragraph consists of legal conclusions to which no response is required.

241.   Denied.

242.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

243.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

244.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

245.   This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions

regarding that caselaw to which no response is required.

246.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

247.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

248.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

249.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

250.    Denied.

251.    Denied.

252.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

253.    Denied.

254.    Denied.

255.    This paragraph is a legal conclusion to which no response is required.

**VII.    IN THE ALTERNATIVE, DEFENDANTS' FUNDING OF PRIVATE CENSORSHIP TOOLS IS FINAL AGENCY ACTION THAT MUST BE SET ASIDE AND VACATED**

256.    This paragraph relates to a claim that has been dismissed and thus no response is required.

257.    This paragraph relates to a claim that has been dismissed and thus no response is required.

258.    This paragraph relates to a claim that has been dismissed and thus no response is required.

27

259.     This paragraph relates to a claim that has been dismissed and thus no response is required.

260.     This paragraph relates to a claim that has been dismissed and thus no response is required.

261.     This paragraph relates to a claim that has been dismissed and thus no response is required.

262.     This paragraph relates to a claim that has been dismissed and thus no response is required.

263.     This paragraph relates to a claim that has been dismissed and thus no response is required.

264.     This paragraph relates to a claim that has been dismissed and thus no response is required.

265.     This paragraph relates to a claim that has been dismissed and thus no response is required.

266.     This paragraph relates to a claim that has been dismissed and thus no response is required.

267.     This paragraph relates to a claim that has been dismissed and thus no response is required.

268.     This paragraph relates to a claim that has been dismissed and thus no response is required.

269.     This paragraph relates to a claim that has been dismissed and thus no response is required.

270.     This paragraph relates to a claim that has been dismissed and thus no response is required.

271.     This paragraph relates to a claim that has been dismissed and thus no response is required.

## COUNT ONE: ABRIDGEMENT OF MEDIA PLAINTIFS' RIGHT TO FREEDOM OF SPEECH

272.     Defendants restate and incorporate by reference the responses contained in all preceding paragraphs.

273.     This paragraph consists of legal conclusions to which no response is required.

274.     Denied.

275.     Denied.

276.     Denied.

## COUNT TWO: ABRIDGEMENT OF MEDIA PLAINTIFS' RIGHT TO FREEDOM OF PRESS

277.     Defendants restate and incorporate by reference the responses contained in all preceding paragraphs.

278.     This paragraph consists of legal conclusions to which no response is required.

279.     Denied.

280.     Denied.

281.     Denied.

282.     Denied.

## COUNT THREE: *ULTRA VIRES* NON-FINAL AGENCY ACTION BEYOND STATUTORY AUTHORITY

283.     Defendants restate and incorporate by reference the responses contained in all preceding paragraphs.

284.     This paragraph consists of legal conclusions to which no response is required.

285.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

286.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

287.    Denied.

288.    Denied.

289.    This paragraph consists of legal conclusions to which no response is required.

290.    This paragraph consists of legal conclusions to which no response is required.

291.    This paragraph consists of legal conclusions to which no response is required.

292.    This paragraph consists of legal conclusions to which no response is required.

293.    This paragraph consists of legal conclusions to which no response is required.

294.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

295.    This paragraph consists of legal conclusions to which no response is required.

296.    This paragraph consists of legal conclusions to which no response is required.

297.    Denied.

298.    Denied.

299.    Denied.

300.    Denied.

## COUNT FOUR: FINAL AGENCY ACTION IN VIOLATION OF THE ADMINISTATIVE PROCEDURE ACT

301.    Defendants restate and incorporate by reference the responses contained in all preceding paragraphs.

302.    This paragraph relates to a claim that has been dismissed and thus no response is

required.

303.    This paragraph relates to a claim that has been dismissed and thus no response is required.

304.    This paragraph relates to a claim that has been dismissed and thus no response is required.

305.    This paragraph relates to a claim that has been dismissed and thus no response is required.

306.    This paragraph relates to a claim that has been dismissed and thus no response is required.

**COUNT FIVE: *ULTRA VIRES* ACTION BEYOND CONSTITUTIONAL BOUNDS**

307.    Defendants restate and incorporate by reference the responses contained in all preceding paragraphs.

308.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

309.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

310.    This paragraph consists of Plaintiffs' characterizations of caselaw and legal conclusions regarding that caselaw to which no response is required.

311.    Denied.

312.    Denied.

313.    Denied.

**PRAYER FOR RELIEF**

Paragraphs A through I of this Section consist of Plaintiffs' characterizations of their request for relief, to which no response is required. To the extent a response is deemed required, Defendants deny that Plaintiffs are entitled to the relief requested or to any relief whatsoever.

Defendants hereby deny all allegations in Plaintiffs' Complaint not expressly admitted herein.

Date: September 3, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSHUA E. GARDNER
Special Counsel
Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Dorothy Matilda Canevari*
DOROTHY M. CANEVARI (NY # 5989694)
CRISTEN C. HANDLEY
JOSHUA KOLSKY
ARJUN MODY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 616-8040
Email: Dorothy.M.Canevari@usdoj.gov

*Counsel for Defendants*