IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| THE DAILY WIRE, LLC, *et al.*,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE *et. al.*,<br><br>　　　*Defendants.* | Civil Action No. 6:23-cv-00609 (JDK) |

## CONSENT DECREE

### I.　JURISDICTION AND VENUE

1.　　This Court has jurisdiction over this action under 28 U.S.C. § 1331.

2.　　Pursuant to the Court's May 7, 2024 denial of Defendants' Motion to Transfer, venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C) because this is a civil action in which Defendants are officers and agencies of the United States and Plaintiff the State of Texas resides in this District. *See* Order, ECF No. 53 at 33-34.

### II.　GENERAL PROVISIONS

3.　　This Agreement resolves all claims in Plaintiffs' Complaint filed in this case. This Agreement shall constitute the entire integrated Agreement of the Parties. No prior drafts or prior or contemporaneous communications, oral or written, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or other proceeding.

4.　　This Agreement is binding upon all Parties hereto, by and through their officials, agents, employees, assigns, and successors.

1

5.    This Agreement is enforceable only by the Parties or their successors as provided by the Federal Rules of Civil Procedure. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action. Accordingly, no Party may seek to enforce this Agreement on behalf of a third party, and no person or entity other than the Parties may assert any claim or right as a beneficiary or protected class under this Agreement. With respect to Plaintiff the State of Texas, this Agreement may be enforced only by the Attorney General of the State of Texas, and only on the State of Texas's behalf. Plaintiff the State of Texas shall not have the authority to enforce this agreement on behalf of its citizens.

6.    This Agreement is not intended to limit the right of any person or organization or to expand the right of any person or organization other than the Plaintiffs to seek relief against the United States or any officer, agent or employee thereof, for their conduct.

7.    This Agreement shall remain operative until January 31, 2036.

8.    For purposes of this Agreement the term "domestic media outlet(s)" means any individual or organization, no matter how organized, physically operating from within the United States or one of its territories, as a provider or aggregator of news. This definition does not include foreign state and non-state actors, regardless of their physical location, nor does it include any provider of an interactive computer service, which provider is not treated as the "publisher or speaker" of relevant news content pursuant to 47 U.S.C. § 230.

9.    For purposes of this Consent Decree, "Fact Checking" includes, i.e., tools or technologies that discredit statements or information based on political opinion, alleged lack of context or failure to include dissenting views, or failure to utilize a particular writing, journalistic, or investigative methodology; but "Fact Checking" does not include, for example, publicly available crowdsourced tools or technologies, such as "Community Notes," used by individuals at the social

2

media company X, or tools or technologies that merely confirm the authenticity or provenance of information. Fact Checking also does not include the government engaging in its own speech.

10.    Nothing in this Agreement is intended to limit the authority of the Federal Government to investigate or prosecute criminal activity or threats to the United States' national security, consistent with all applicable laws and other authorities.

11.    For purposes of this Agreement, "constitutionally protected speech" under the First Amendment does not include obscenity, incitement to imminent violence, or speech integral to criminal conduct, but does include, for example, the Media Plaintiffs' speech that formed the basis of this litigation. Specifically, Media Plaintiffs' "constitutionally protected speech" includes the following speech that Media Plaintiffs allege was suppressed, censored, demonetized, or downgraded, by the use of countering propaganda and disinformation ("CPD") Tools or Technologies including those tested, funded, or promoted by the Defendants, or flagged for suppression or censorship by the GEC.  This list is not comprehensive but illustrative only.

    a.    Speech discussing COVID, including its origin, the safety of vaccines, the usefulness of masking, and the harm caused by school and business shutdowns, such as the content discussed in these articles:

       1)    Dennis Prager, *Everything the Left Touches It Ruins, Now Add Science*, Aug. 22, 2020, https://www.dailywire.com/news/prager-everything-the-left-touches-it-ruins-now-add-science;

       2)    Hank Berrien, *Project Veritas Finds NY Funeral Directors Skeptical About Coronavirus Numbers*, Apr. 30, 2020, https://www.dailywire.com/news/watch-project-veritas-finds-ny-funeral-directors-skeptical-about-coronavirus-numbers;

       3)    Jordan Boyd, *Emails Show Fauci Knew Masks Weren't Very Effective Before Pushing Universal Masking*, June 02, 2021, https://thefederalist.com/2021/06/02/emails-show-fauci-knew-masks-werent-very-effective-before-pushing-universal-masking/;

    b.    Speech discussing election integrity, including violations of state election laws, allegations of illegal or fraudulent voting, and critiques on the integrity and

security of ballots, polls, and voting machines, such as the content discussed in these articles:

1) Ben Shapiro, *Biden Endorses Trump?*, June 26, 2023, https://www.facebook.com/reel/3368684396795638;
2) Matthew Cochran, *America Won't Trust Elections Until The Voter Fraud Is Investigated,* November 08, 2020, *https://thefederalist.com/2020/11/08/america-wont-trust-elections-until-the-voter-fraud-is-investigated/*;
3) Mollie Hemingway, *No, The Georgia Vote-Counting Video Was Not 'Debunked.' Not Even Close*, December 7, 2020, https://thefederalist.com/2020/12/07/no-the-georgia-vote-counting-video-was-not-debunked-not-even-close/

c. Speech discussing abortion, issues related to sexuality or transgender ideology, and a variety of other topics of public interest, such as the content discussed in these articles:

1) Amanda Prestigiacomo, *FDA: Several Deaths Linked to Abortion Pill*, July 26, 2018, https://www.dailywire.com/news/report-abortion-pill-kills-22-women-injures-amanda-prestigiacomo;
2) Matt Walsh, *Abortion Advocates Keep Telling This Huge Lie About Late-Term Abortion. Don't Fall For It*, Jan. 30, 2019, https://www.dailywire.com/news/walsh-abortion-advocates-keep-telling-huge-lie-matt-walsh;
3) Michael Knowles, *AOC Travels to Europe to Cry About Global Warming. Literally*, Oct. 15, 2019, https://www.dailywire.com/news/knowles-aoc-travels-to-europe-to-cry-about-global-warming-literally;
4) Jordan Boyd, *Chuck Schumer Endorses Biden's Plan To Force Public Schools To Allow Males In Female Bathrooms*, Dec. 3, 2020, https://thefederalist.com/2020/12/03/chuck-schumer-endorses-bidens-plan-to-force-public-schools-to-allow-males-in-female-bathrooms/
5) Sean Davis, *BREAKING: DNI Declassifies Handwritten Notes From John Brennan, 2016 CIA Referral On Clinton Campaign's Collusion Operation*, Oct. 6, 2020, https://thefederalist.com/2020/10/06/breaking-dni-declassifies-handwritten-notes-from-john-brennan-2016-cia-referral-on-clinton-campaigns-collusion-operation/;
6) Sean Davis, *Intel Community Secretly Gutted Requirement of First-Hand Whistleblower Knowledge*, Sept. 27, 2019, https://thefederalist.com/2019/09/27/intel-community-secretly-gutted-requirement-of-first-hand-whistleblower-knowledge/;

## III.  <u>INJUNCTIVE RELIEF</u>

12.     The State Department and its employees, contractors (here and throughout contractors shall include subcontractors), and agents ("Defendants") shall take or not take the following actions.

a.     Defendants will not use electronic tools or technologies to knowingly or intentionally suppress, censor, demonetize, or downgrade the constitutionally protected speech of Americans or domestic media outlets. Defendants remain free to speak in their capacity as government officials to disagree with, criticize, or encourage self-restraint of speech.

b.     Defendants will not request or recommend that third parties use electronic tools or technologies to knowingly or intentionally suppress, censor, demonetize, or downgrade constitutionally protected speech of Americans or domestic media outlets.

c.     Defendants will not fund, promote, or assist in the testing or development of any fact-checking, media-credibility rating, CPD, or media literacy tool, technology, product, or program that is marketed with the purpose and intent of, or intended by Defendants for any entity's use in, suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of Americans or domestic media outlets.

d.     Defendants will use their best efforts to request the removal of the account established on behalf of GEC to promote CPD tools and technologies on the social media platform Twitter, now X, with the username @DisinfoCloud.

e.     Defendants will use their best efforts to request the removal of those online videos of media literacy training and supporting materials that were funded by the State Department and conducted by Media Literacy Now, available at https://www.medialogues.de/videos, and which specifically labeled Media Plaintiffs unreliable and advocated the use of tools that would limit or filter Media Plaintiffs' speech.

f.  Defendants will use their best efforts to request the removal of the online videos and supporting materials of the U.S.-Paris Tech Challenge that were funded by the GEC, available at https://www.atlanticcouncil.org/event/u-s-paris-tech-challenge.

g.  Any awards, grants, or other funding that Defendants provide, directly or indirectly, for the purpose of testing or developing any fact-checking, media-credibility rating, CPD, or media literacy tool, technology, product, or program, intended for use in combating foreign threats to United States national security shall include written language that:

   i.   Instructs that the relevant award, grant, or other funding may not be used by the recipient(s) with the purpose or intent of suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of Americans or domestic media outlets.

   ii.  Requires that the recipient(s) make reasonable efforts to avoid using the relevant tool, technology, product, or program that is the subject of the award in a manner that would inadvertently suppress, censor, demonetize, downgrade, or fact-check the constitutionally protected speech of Americans or domestic media outlets. Reasonable efforts may include the use of geofencing or other similar measures that limit the domestic reach of the relevant technology.

   iii. Instructs that the recipient(s) cannot commercialize or provide any tool, technology, product, or program that is funded by Defendants and marketed or intended to suppress, censor, demonetize, downgrade, or fact-check the constitutionally protected speech of Americans or domestic media outlets for use outside law enforcement purposes.

h.  Defendants will not collaborate with foreign governments or nongovernmental organizations ("NGOs") with the purpose or intent to suppress, censor, demonetize, downgrade or fact-check the constitutionally protected speech of Americans or domestic media outlets.

i.  The State Department will not use its official website to feature tools, technologies, products, or programs that are designed or marketed with the purpose and intent of, or intended by Defendants for any entity's use in suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of Americans or domestic media outlets.

6

j.    Defendants will not share with or distribute to either governmental or non-governmental actors any assessments of, or recommendations for, tools, technologies, products, or programs that are designed or marketed with the purpose and intent of, or intended by Defendants for any entity's use in suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of Americans or domestic media outlets, including, but not limited to, the Technology Assessment Summaries and Tech Demos videos created by the GEC. This provision does not prevent Defendants from sharing information with other federal agencies as required by law.

k.    The State Department will not use its official website to feature tools, technologies, products, or programs that are designed or marketed with the purpose and intent of, or have the effect of, suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of the Media Plaintiffs, The Daily Wire, LLC or FDRLST Media, LLC. Nor will Defendants share with or distribute to either governmental or non-governmental actors any assessments of, or recommendations for, tools, technologies, products, or programs that are designed or marketed with the purpose, intent, or effect of suppressing, censoring, demonetizing, downgrading, or fact-checking the constitutionally protected speech of Media Plaintiffs, The Daily Wire, LLC or FDRLST Media, LLC., including, but not limited to, the Technology Assessment Summaries and Tech Demos videos created by the GEC. This provision does not prevent Defendants from sharing information with other federal agencies as required by law.

13.    Within 30 days of the Court's approval of this Consent Decree, the State Department will provide notice of this Consent Decree to all of its employees (including contractors) and grantees.

14.    In the calendar years 2030 and 2035, the State Department will provide training to all employees (including contractors) and grantees, that, at a minimum, emphasizes the legal

limitations the First Amendment places on the State Department's ability to suppress, censor, demonetize, or downgrade the constitutionally protected speech of Americans or domestic media outlets, including limitations on the government acting through third parties.

15.    The State Department will make publicly available all information that must be listed at USASpending.gov pursuant to the Federal Funding Accountability and Transparency Act of 2006 and the Digital Accountability and Transparency Act of 2014.

16.    On an annual basis while this decree is in effect, the State Department will provide the Media Plaintiffs with a letter confirming compliance with the terms of this Consent Decree, signed by a representative of the State Department after undertaking a reasonable inquiry.

## IV.    <u>LIMITATIONS</u>

17.    The prohibitions in this Consent Decree, *see supra* ¶¶ 12-16, apply only to Defendant the State Department and its employees, contractors, and agents.

18.    Nothing in this Consent Decree prevents the State Department or its employees, contractors, and agents from using or developing any tools, technologies, products, or programs—including CPD and media literacy tools, technologies, products, or programs—internally to identify or address foreign threats to the United States' national security, or threats to the safety or security of Department personnel or assets. This includes internal use of tools, technologies, products, or programs to identify or address speech having a direct nexus to a foreign operation that threatens the United States' national security.

19.    Nothing in this Consent Decree prevents the State Department or its employees, contractors, and agents from collaborating with foreign governments or NGOs to identify and address foreign threats to the United States' national security.

20.    Nothing in this Consent Decree prevents the State Department or its employees, contractors, and agents from internally assessing new tools, technologies, products, or programs to

ensure that they do not suppress, censor, demonetize, downgrade, or fact-check the constitutionally protected speech of Americans or domestic media outlets. This includes internal assessments of new tools, technologies, products, or programs that incidentally reach the constitutionally protected speech of Americans or domestic media outlets for purposes of identifying or developing other tools, technologies, products, or programs to address foreign threats to the United States' national security or anti-American propaganda, influence operations, or information operations conducted by or on behalf of foreign governments. However, in internally assessing any such tools, technologies, products, or programs, Defendants, their employees, contractors, and agents, shall not use or implement the tools, technologies, products, or programs in a manner inconsistent with this Consent Decree.

21.     Nothing in this Consent Decree shall prevent the State Department or its employees, contractors, or agents from recommending tools, technologies, products, or programs that enable internet users, including American users, to obtain or share information about the provenance, authenticity, or falsity of digital content published or posted by or at the direction of foreign governments or foreign nongovernmental organizations provided that such actions are consistent with paragraph 12.

## V.     CONSENT DECREE ADMINISTRATION

22.     This Court's jurisdiction to enforce this Consent Decree shall be limited to issuing orders necessary to redress any violations of paragraphs 12-16 above, and to any action for the enforcement of the Parties' EAJA Settlement Agreement and Release described in paragraph 25.

23.     Before bringing any motion to enforce this Consent Decree, Plaintiffs must first specifically identify the purported violation and bring it to the attention of Defendant State Department. Defendant State Department will then have at least sixty (60) business days to investigate and, if necessary, remedy that violation. At the end of the sixty (60) business days, Defendant State

Department must provide the results of its investigation to Plaintiffs along with any appropriate supporting documentation that would be producible through a Freedom of Information Act request. If Plaintiffs believe Defendant State Department's explanation is inadequate, within thirty (30) business days Plaintiffs must provide Defendant State Department notice of their concerns. If Defendant State Department's alleged breach is not remedied within thirty (30) business days following Plaintiffs' notice, unless the Parties agree to additional time for negotiation, Plaintiffs may file an appropriate motion with the Court.

24.     Should technological advances develop whereby the terms of this Decree may be construed to interfere with the legitimate and lawful mission of Defendant State Department, the Parties may jointly request the Court to amend the Consent Decree. In the event the Parties fail to agree to such an amendment, Defendant State Department may request that the Court order an amendment to the Consent Decree. Such an amendment must be consistent with the intent and purpose reflected herein. Prior to unilaterally filing for any such amendment, the Defendant State Department shall confer with Plaintiffs for not less than ten (10) business days.

## VI.   ATTORNEYS' FEES

25.     All claims for attorneys' fees and costs in this case have been resolved by the Parties through a separate EAJA Settlement Agreement and Release.

## VII.   RELEASE

26.     Except as provided in paragraph 27 below, this Consent Decree, once finally approved and in effect, resolves in full all claims, agreements, actions, cases, causes of action, compromises, controversies, costs, damages, debts, demands, disputes, expenses, judgments, liabilities, payments, promises, and suits of any nature whatsoever which are based upon or could be based upon or arise from the facts alleged in Plaintiffs' operative Complaint, whether or not known, against Defendants or their current and former agents, servants, officers, officials, and/or employees, in their individual

and official capacities, by Plaintiffs, their agents, heirs, and assigns, involving violations of law or constitutional rights, including, without limitation, their First Amendment rights or any other federal law, regulation, duty, or obligation, or any other legal theory, action or cause of action. When this Consent Decree is final, as of the date the Court enters this Order, Plaintiffs, their agents, heirs, and assigns, waive all rights to any and all claims against Defendants or their current and former agents, servants, officers, officials, and/or employees, in their individual and official capacities relating to the allegations in the Complaint under any theory or cause of action whatsoever under federal law. This waiver and release shall include a full release and waiver of unknown rights against Defendants or their current and former agents, servants, officers, officials, and/or employees, in their individual and official capacities based on claims (including any individual claims) relating to the allegations in the Complaint.

27.    For purposes of this Release, private entities such as technology and media companies, providers of CPD Tools or Technologies, and grantees and parties to collaborative agreements are not "agents, servants, officers, officials, and/or employees" of Defendants and nothing in this Consent Decree shall release or waive the rights of the Media Plaintiffs against any such third parties.

So **ORDERED** and **SIGNED** this **8th**  day of **April, 2026.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

11

CONSENTED TO BY:

/s/*Margot J. Cleveland*          Date: March 31, 2026

Margot J. Cleveland (MI Bar No. P83564)
Zhonette M. Brown (CO Bar No. 40011)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive
Suite 300
Arlington, VA 22203
(202) 869-5210


**FOR MEDIA PLAINTIFFS:**
**The Daily Wire, LLC**
**FDRLST Media, LLC**

CONSENTED TO BY:


/s/ *David Bryant*                        Date: March 31, 2026
**David Bryant**
Senior Special Counsel
Texas Bar No. 03281500
**Munera Al-Fuhaid**
Special Counsel
Texas Bar No. 24094501

**Office of the Attorney General of Texas**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
David.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov

**FOR THE STATE OF TEXAS**

CONSENTED TO BY:

**FOR DEFENDANTS:**

DATE: 3/31/26

Brett A. Shumate
Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530

14